**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL SHERMAN ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 19-1258 |
| | ) | District Judge Robert J. Colville |
| v. | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| CO ROBERT HOLLOWOOD, CO PAUL | ) | |
| GAFFEY, SGT. CHRISTOPHER SHELDON, | ) | Re: ECF No. 50 |
| LIEUT. ALBERT WOOD, DORINA | ) | |
| VARNER, SGT. MICHAEL PIERCE, | ) | |
| WAYNE INNIS, RHONDA HOUSE, MARK | ) | |
| CAPOZZA, CO JUAN MACIAS, KERRI | ) | |
| CROSS, WELLPATH, LLC and JOHN/JANE | ) | |
| DOES, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>REPORT AND RECOMMENDATION</u>**

## I.    RECOMMENDATION

This is a counseled prisoner civil rights action filed by Plaintiff Michael Sherman Allen ("Plaintiff"), an inmate at State Correctional Institution at Dallas ("SCI-Dallas").  Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983, 1985 and 1986 arising out of allegations that prison officials at State Correctional Institution at Fayette ("SCI-Fayette") used excessive force and retaliated, conspired, and discriminated against him in violation of his First, Eighth, and Fourteenth Amendment rights.  ECF No. 45.

Presently before the Court is a Motion to Dismiss Amended Complaint filed by Defendants Robert Hollowood ("Hollowood"), Albert Wood ("Wood"), Rhonda House ("House"), Paul Gaffey ("Gaffey"), Christopher Sheldon ("Sheldon"), Juan Macias ("Macias"), Mark Capozza

("Capozza"), Dorina Varner ("Varner"), Wayne Inniss ("Inniss"),[1] Michael Pierce ("Pierce") and Kerri Cross ("Cross") (collectively, "Defendants").  ECF No. 50.  For the reasons that follow, it is respectfully recommended that Defendants' Motion to Dismiss should be granted in part and denied in part.  The Court should dismiss Count V against Defendants Wood, House, Capozza, Varner, Inniss, Pierce and Cross, and it should also dismiss Count IV against Defendant Wood. The Motion to Dismiss should be denied with respect to all other relief requested.

II.    **REPORT**

    **A.  FACTUAL AND PROCEDURAL BACKGROUND**

        **1.  Plaintiff's Allegations**

Plaintiff is an African-American inmate.  ECF No. 45 ¶ 3.  He previously filed a lawsuit against various prison officials at State Correctional Institution at Graterford ("SCI-Graterford") on July 23, 2015, where he formerly was incarcerated.  Id. ¶ 17.  While that lawsuit was pending, one of the defendants, Edward Settle ("Settle"), died.  Id. ¶ 18.  The case resolved before trial.  Id. ¶ 18.

In 2015, Plaintiff was transferred to SCI-Fayette, where prison officials knew about Plaintiff's prior lawsuit and Settle's death.  Id. ¶¶ 19-20.  As a result, Plaintiff was harassed by prison officials at SCI-Fayette, who called him a "snitch" and "scum bag" and blamed him for Settle's death.  Id. ¶ 21.

On February 25, 2019, Plaintiff left his cell to use the telephone.  Id. ¶ 22.  While on the phone, Plaintiff saw Defendants Hollowood, Macias and Gaffey enter his cell, and he returned to

---

[1] Although Plaintiff identifies this Defendant as "Wayne Innis" in the caption of his Amended Complaint, he spells the last name "Inniss" in the body of his Amended Complaint and in the caption of his original Complaint, and this Defendant has also entered his appearance as "Wayne Inniss."  See ECF No. 5 at 2; ECF No. 45 ¶¶ 10, 63; and ECF No. 13.  For this reason, the caption in his Amended Complaint appears to be a typographical error, and the Court refers to this Defendant as "Inniss."

his cell to investigate.  Id. ¶¶ 25-26.  Hollowood was "tearing up" Plaintiff's CPAP machine, which
he needs to breathe while sleeping.  Id. ¶ 29.  Hollowood denied Plaintiff's request to "be easy"
with his machine, saying "I can do whatever I want because I'm an American."  Id. ¶ 31.

Gaffey did not permit Plaintiff to enter his cell, and he ordered Plaintiff to strip down in
front of the other inmates on the block.  Id. ¶¶ 30, 32.  Although Plaintiff complied, he found the
order to be degrading and unusual, and he questioned the order.  Id. ¶ 33.

Hollowood then attacked Plaintiff, striking him repeatedly.  Id. ¶¶ 34-36.  Plaintiff
unsuccessfully pleaded with the supervising sergeant, Sheldon, to intervene.  Id. ¶¶ 26, 37.  Other
inmates yelled that Defendants should stop the beating, and Gaffey, Sheldon, and Macias pulled
Plaintiff into his cell.  Id. ¶¶ 38-39.  Hollowood continued to assault Plaintiff and called him a
"nigger."  Id.  ¶¶ 40-42.

In the course of his attack, Hollowood falsely yelled that Plaintiff had "punched a guard."
Id. ¶ 43.  Other correctional officers arrived in response.  Id.  Sheldon got on Plaintiff's back.  Id.
¶ 44.  Hollowood told the officers to "[b]reak the nigger's fingers," and an officer whose identity
is presently unknown then tried to break each of Plaintiff's fingers.  Id. ¶¶ 45-46.

An unidentified officer directed that the video recorder be turned off, and he instructed
Defendants to pick Plaintiff up off the ground and put a spit mask on him.  Id. ¶¶ 49-50.  Plaintiff
was placed into wheelchair, threatened against making any movements, and then taken to the
infirmary.  Id. ¶¶ 52-55 at 8.[2]

Defendants sought to have Plaintiff cleared for placement in the Restricted Housing Unit
("RHU"), but medical staff placed Plaintiff in a glass observation cell for three days.  Id. ¶¶ 55-58
at 8.  He was not given his CPAP machine during this time, and Plaintiff claims that medical staff

---

[2] Plaintiff's Amended Complaint mistakenly lists paragraphs numbered 51 to 59 twice.  See ECF No. 45 at 8-10.
The Court includes the page number where appropriate to identify which paragraph is being cited.

did not examine his injuries, discouraged and/or dismissed his complaints regarding hearing loss, injuries to his shoulder and back and nerve damage, and they did not document the cause of Plaintiff's injuries.  Id. ¶¶ 58-59 at 8.

Plaintiff filed grievances regarding the February 25, 2019 incident.  Id. ¶ 51 at 9.  When Plaintiff tried to introduce video evidence of the incident, Cross, the hearing examiner, refused to retrieve the video.  Id. ¶¶ 52-53 at 9.  During the grievance process, Wood admitted to Plaintiff that Hollowood's use of force was improper, and that Hollowood lied about the incident by saying that Plaintiff had a wooden weapon.  Id. ¶ 55 at 9.

Cross found that Plaintiff was guilty of misconduct, although his grievance was "upheld" to the extent Plaintiff claimed he was assaulted based on his race.  Id. ¶¶ 54, 56 at 9-10.  Plaintiff was disciplined and spent approximately one month combined in the observation cell and RHU.  Id. ¶¶ 52, 60 at 9-10.

While confined in the RHU, Plaintiff learned that his personal property was missing.  Id. ¶ 57 at 10.  Although Plaintiff filed a grievance, it was denied based on his failure to provide proof of purchase and/or ownership of the property.  Id. ¶ 58 at 10.  Pierce denied Plaintiff's request for this information to support his claim.  Id. ¶ 59 at 10.

In April 2019, Plaintiff was transferred to SCI-Dallas.  Id. ¶ 61.  Inniss "made threats to Plaintiff regarding his grievances" and he told the SCI-Dallas Superintendent to "be on the lookout" for Plaintiff.  Id. ¶ 63.  On October 16, 2019, unidentified prison officials at SCI-Dallas "tore up" Plaintiff's cell and confiscated his personal property.  Id. ¶ 62.

### 2.  Plaintiff's Claims

Plaintiff asserts seven claims: Count I: excessive force in violation of the Eighth Amendment; Count II: violation of the equal protection clause of the Fourteenth Amendment;

Count III: denial of adequate medical care in violation of the Eighth Amendment; Count IV: retaliation in violation of the First Amendment; Count V: federal civil conspiracy and failure to prevent conspiracy pursuant to 42 U.S.C. §§ 1985(3) and 1986; Count VI: battery; and Count VII: intentional infliction of emotional distress.  Id. ¶¶ 65-122.

Plaintiff asserts Counts I, II, VI and VII against Hollowood, Sheldon, Gaffey, Macias and Doe Defendants.  Id. ¶¶ 69, 79, 119, 122.  He asserts Count III against Wellpath, which has since been dismissed, and Doe Defendants.  Id. ¶ 86; ECF No. 53.  He asserts Count IV against Hollowood, Sheldon, Gaffey, Macias, Cross, Wood and Doe Defendants.  ECF No. 45 ¶¶ 99-100.  Finally, Plaintiff asserts Count V against all Defendants.  Id. at 16.

### 3.  Procedural History

Plaintiff initiated this action *pro se* on September 17, 2019 by filing a Motion for Leave to Proceed *in forma pauperis* ("IFP Motion").  The Court granted Plaintiff's IFP Motion on November 19, 2019, and his Complaint was filed the same day.  ECF Nos. 4 and 5.

Defendants filed an Answer and moved for judgment on the pleadings.  ECF Nos. 19 and 27.  Plaintiff then requested leave to amend his Complaint, which the Court granted, rendering the Motion for Judgment on the Pleadings moot.   ECF Nos. 34, 35 and 36.

Plaintiff subsequently retained counsel, and he filed the operative Amended Complaint on October 5, 2020.  ECF Nos. 42 and 45.

### 4.  Motion to Dismiss

Defendants filed the instant Motion to Dismiss and Brief in Support on November 9, 2020.  ECF Nos. 50 and 51.  Plaintiff filed a Brief in Opposition on November 22, 2020.  ECF No. 55.

The Motion to Dismiss is now ripe for consideration.

**B.  LEGAL STANDARD**

In assessing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff.  Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008).  The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint.  See Cal. Pub. Employees' Retirement Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the Court accept legal conclusions set forth as factual allegations.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

## C.  DISCUSSION

### 1.  Fourteenth Amendment Claim (Count II)

Defendants argue that Plaintiff's Fourteenth Amendment claim should be dismissed.  ECF No. 51 at 5.  In particular, Defendants argue that Plaintiff cannot reassert his Eighth Amendment claim under the more generalized notion of substantive due process contained in the Fourteenth Amendment.  Id.

As Plaintiff points out, however, he is not simply restating his Eighth Amendment claim as a substantive due process violation under the Fourteenth Amendment.  ECF No. 55 at 11-12.  Rather, Plaintiff states a claim for violations of equal protection under the Fourteenth Amendment based upon his allegations that the assault was racially motivated.  See, e.g., Meronvil v. Doe, No. 17-8055, 2018 WL 295564, at *2 (D. N.J. Jan. 3, 2018) (citing Burton v. Livingston, 791 F.2d 97, 101 n. 1 (8th Cir. 1986) ("when racially derogatory language is coupled with conduct infringing the prisoner's right to security of his person, an inference arises that the conduct was motivated by racial bias" and states a claim under the Equal Protection Clause); Owens v. Leith, No. 06-cv-2109, 2007 WL 928139, at *5 (D. N.J. Mar. 27, 2007) ("The contention that an assault by a prison guard is racially motivated . . . states an equal protection claim")).  As set forth in Plaintiff's Amended Complaint, Hollowood allegedly used racial slurs while assaulting, and encouraging others to assault, Plaintiff.  Accordingly, at this early stage of the case, Count II should not be dismissed.

### 2.  Federal Civil Conspiracy and Failure to Prevent Conspiracy Claim (Count V)

Defendants also argue that Plaintiff fails to state claims for conspiracy and failure to prevent conspiracy in Count V.  ECF No. 51 at 7.  Defendants argue that Plaintiff relies upon conclusory allegations, which are insufficient to plead conspiracy.  Id. at 7-8.  As to Defendants' alleged failure to prevent conspiracy, they also argue that courts in the Third Circuit do not recognize "failure to intervene" claims with respect to First Amendment violations.  Id. at 8.

In response, Plaintiff argues that Defendants participated in a "conspiracy to use excessive force, to cover it up, and to unjustly discipline Plaintiff—all because of his race and in retaliation for Plaintiff's exercise [of] his First Amendment rights."  ECF No. 55 at 16.  Plaintiff argues that direct evidence is seldom available to support a conspiracy claim, and that he may rely upon circumstantial evidence to show that Defendants had an agreement or meeting of the minds.  Id.  Here, Plaintiff argues, Defendants conspired to assault and beat Plaintiff, then they colluded after-the-fact to conceal that assault, with Wood admitting that Hollowood lied about the incident and Cross refusing to review exculpatory video footage of the incident.  Id. at 17-18.  Plaintiff also argues that Defendants' failure to intervene relates to conspiracy, not a First Amendment violation, and, therefore, Defendants' argument is inapplicable with respect to his claim for failure to prevent conspiracy.

In Count V, Plaintiff asserts two claims: (1) conspiracy pursuant to 42 U.S.C. § 1985(3) and (2) failure to prevent conspiracy pursuant to 42 U.S.C. § 1986.  ECF No. 45 ¶¶ 102, 110.  The Court first addresses Plaintiff's conspiracy claim under Section 1985(3).

Section 1985(3) "was enacted to combat conspiracies motivated by racial or class-based discrimination."  Bailey v. Beard, No. Civ. 3:cv-06-1707, 2008 WL 4425788, at *2 (M.D. Pa. Sept. 29, 2008) (citing Griffin v. Breckenridge, 403 U.S. 88, 91 (1971)).  Under this statute, an action may "be brought by one injured by a conspiracy formed for the purpose of depriving, either directly

or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." Estate of Oliva v. N.J. Dep't of Law & Pub. Safety, Div. of State Police, 604 F.3d 788, 802 (3d Cir. 2010) (internal citation and quotations omitted).

Plaintiff must allege four elements to state a Section 1985(3) claim: "(1) a conspiracy; (2) motivated by a racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." Lake v. Arnold, 112 F.3d 683, 685 (3d Cir. 1997) (citing United Bhd. of Carpenters & Joinders of Am., Local 610 v. Scott, 463 U.S. 825, 828-29 (1983)).

In order to state a cognizable claim for conspiracy, Plaintiff cannot rely on broad or conclusory allegations. Bailey, 2008 WL 4425788, at *2 (citing D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989)). Rather, the claim must contain supportive factual allegations which "address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators to achieve that purpose." Id. (quoting Rose, 871 F.2d at 366) (internal quotations omitted).

Because "[t]he essence of a conspiracy is an agreement or concerted action between individuals," a plaintiff must plead "with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right." McNeil v. Pennsylvania, No. 3:cv-05-925, 2006 WL 618421, at *4 (M.D. Pa. Mar. 10, 2006) (citing D.R. by L.R., 972 F.2d at 1377; Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989); Rose, 871 F.2d at 366; Young v.

Kann, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991); Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 539 (E.D. Pa. 1982)).   In other words, "there must be some specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity." Id. (citing Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985)).   "A plaintiff cannot rely on subjective suspicions and unsupported speculation." Id. (citing Young, 926 F.2d at 1405 n. 16).

Upon review, Plaintiff's conspiracy claim in Count V should not be dismissed as to the moving Defendants allegedly involved in the underlying assault on February 25, 2019— Hollowood, Sheldon, Gaffey, and Macias.   Relative to this incident, Plaintiff pleads that these Defendants formed a prior agreement to harass and abuse him because of his race.   ECF No. 45 ¶ 106.   Each of these Defendants allegedly participated in some capacity during the February 25, 2019 incident, and most gathered together in his cell beforehand—suggesting a plausible meeting of the minds.   Plaintiff supports his claim of race-based animus with allegations that Defendants used racial epithets during the assault, and that his grievance was upheld with respect to his claim that he was assaulted because of his race.   Therefore, at this preliminary stage of the litigation, these allegations are sufficient to state a claim under § 1985(3).

Plaintiff's § 1985(3) claim should be dismissed, however, against Wood, House, Capozza, Varner, Inniss, Pierce and Cross.   Plaintiff does not identify any alleged conspiracy to which some or all of these Defendants agreed that gives rise to a claim under § 1985(3).   To the extent Plaintiff argues that Defendants conspired to use excessive force, there are no allegations that Wood, House, Capozza, Varner, Inniss, Pierce, or Cross participated in any such agreement.   Plaintiff does not allege that they reached a prior agreement with any of the Defendants who allegedly participated in the February 25, 2019 incident (Hollowood, Sheldon, Gaffey and Macias), or that they took any action in furtherance of this assault.   To the contrary, he argues that Defendants "colluded *after-*

*the-fact*" to cover up the assault.  See ECF No. 55 at 17 (emphasis added).  Thus, Plaintiff does not state a claim under § 1985(3) against Wood, House, Capozza, Varner, Inniss or Cross with respect to any alleged conspiracy to use excessive force.

To the extent Plaintiff argues there was an after-the-fact conspiracy to cover up the use of excessive force, or to unjustly discipline him, he also does not state a claim under § 1985(3).  See ECF No. 55 at 16.  There are no allegations that any alleged cover up or unjust discipline was motivated by race or class-based animus.  See Griffin, 403 U.S. at 102 ("The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.").  To the contrary, Plaintiff claims that his grievance was upheld to the extent he was assaulted based on his race, and he argues that he was disciplined in retaliation for filing a prior lawsuit—not because of racial discrimination.  See ECF No. 45 ¶ 56 at 10; ECF No. 55 at 9.

 Moreover, Plaintiff's allegations against House, Capozza, Varner, Pierce, and Inniss do not relate to a purported conspiracy to cover up the use of excessive force or to unjustly discipline him.  Instead, Plaintiff argues that House, Capozza, Varner, and Pierce participated in "the conspiracy" by "ignoring and/or impeding Plaintiff's grievance seeking compensation for the items Defendants unlawfully compensated."  ECF No. 55 at 10.  He claims that Inniss threatened him regarding his grievances and told the SCI-Dallas Superintendent to be in the lookout for Plaintiff.  ECF No. 55 at 9-10.  Plaintiff also does not plead specific facts that tend to show these Defendants entered into an agreement, for any purpose.

Similarly, Plaintiff does not sufficiently plead that Wood and Cross conspired with others.  Plaintiff pleads that Wood had knowledge of Hollowood's lies, yet he failed to use this knowledge to "prevent and/or intervene to stop *other* Defendants' conspiracy."  ECF No. 45 ¶ 113 (emphasis

added).  Plaintiff claims that Cross acted in concert with others because she "had a role" in injuring Plaintiff, and he argues that her actions "effectively affirmed and emboldened the Defendants' use of excessive force and racial discrimination."  Id. ¶ 105; ECF No. 55 at 10.  It is not clear with whom, if anyone, these Defendants allegedly entered into an agreement and for what purpose. Accordingly, the Court should dismiss Plaintiff's conspiracy claim in Count V against Wood, House, Capozza, Varner, Inniss, Pierce and Cross.

The Court next considers Plaintiff's Section 1986 claim.  "Section 1986 is a companion to § 1985(3) and provides the claimant with a cause of action against any person who, knowing that a violation of § 1985 is about to be committed and possessing power to prevent its occurrence, fails to take action to frustrate its execution."  Meronvil v. Doe, No. 17-cv-8055, 2018 WL 295564, at *3 (D. N.J. Jan. 3, 2018) (citing Farber v. City of Paterson, 440 F.3d 131, 137 (3d Cir. 2016)). Thus, a claim under § 1986 requires a preexisting violation of §1985.  Clark v. Clarbaugh, 20 F.3d 1290, 1295 (3d Cir. 1994).  In order to prove a claim under § 1986, plaintiff must show that: "(1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in the preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed."  Id.

In his Amended Complaint, Plaintiff claims that all Defendants are liable under §1986 because they did not try to dissuade or prevent any other Defendants from violating Plaintiff's constitutional rights.  ECF No. 45 ¶ 111.  With respect to Wood, Plaintiff alleges that Wood knew that Hollowood lied about Plaintiff to justify the use of excessive force, but that he failed to intervene or prevent the other Defendants' conspiracy.  Id. ¶¶ 112-114.

Upon review, Plaintiff states a claim under § 1986 against Defendants Hollowood, Sheldon, Gaffey and Macias.  For the reasons previously discussed, Plaintiff plausibly details a §

1985(3) conspiracy to injure Plaintiff because of his race.  Given their presence in his cell before and/or during the incident, Plaintiff pleads sufficient allegations from which it could be inferred that these Defendants had prior knowledge of the attack and an opportunity to stop or prevent it, but they failed to do so.  At this preliminary stage, Plaintiff states a claim under § 1986 against Hollowood, Sheldon, Gaffey and Macias.

With respect to Wood, House, Capozza, Varner, Inniss, Pierce and Cross, however, Plaintiff fails to state a § 1986 claim in his Amended Complaint.  There are no allegations to suggest these Defendants had prior knowledge of the alleged conspiracy relative to the February 25, 2019 incident, or that they had the opportunity to prevent it.

Thus, the Court should deny the Motion to Dismiss with respect to Count V against Hollowood, Sheldon, Gaffey and Macias.  The Court should grant the Motion to Dismiss as to Count V against Defendants Wood, House, Capozza, Varner, Inniss, Pierce and Cross.

### 3.  Lack of Personal Involvement

Defendants also argue that Wood, House, Capozza, Varner, Cross, Pierce and Inniss should be dismissed because Plaintiff does not allege their personal involvement in the underlying wrongs.  ECF No. 51 at 3-5.  With respect to these Defendants, Plaintiff asserts Counts IV and V against Cross and Wood.  He only asserts Count V against House, Capozza, Varner, Pierce and Inniss.  Because the Court previously recommended that Count V be dismissed against these particular Defendants for failure to state a claim, it limits its discussion to Plaintiff's claim for retaliation, Count IV, against Cross and Wood.

In support of the Motion to Dismiss, Defendants argue that the mere fact an individual receives and reviews a letter or request slip, or has some involvement in the grievance process, is insufficient to establish the requisite personal involvement to be held liable under § 1983.  ECF

No. 51 at 3-4.  Here, Defendants argue, Cross is a hearing examiner, and Plaintiff pleads no allegations other than his disagreement with her judgment whether to rely on video evidence in considering his grievance.  Id. at 4.  With respect to Wood, Defendants argue that he simply was involved in the grievance process, which is insufficient to give rise to liability.  Based on these allegations, Defendants argue that Wood and Cross lack the requisite personal involvement and should be dismissed.

In his Response, Plaintiff asserts that Defendants have parsed and mischaracterized his allegations.  ECF No. 55 at 8.  With respect to Cross, Plaintiff claims that she deliberately refused to consider exculpatory video evidence and unjustly disciplined Plaintiff.  Id. at 10.  By doing so, Plaintiff argues, Cross both retaliated against Plaintiff and participated in an ongoing conspiracy.  Id.  With respect to Wood, Plaintiff refers the Court to allegations that Wood told Plaintiff that Hollowood lied, conceded Hollowood's use of force was improper, failed to prevent or intervene in a conspiracy in which Plaintiff was found guilty of misconduct, and that Wood "went along" with the "flawed grievance process" that resulted in Plaintiff's solitary confinement, and which was imposed in retaliation for Plaintiff's exercise of his First Amendment rights by filing a lawsuit against prison officials at SCI-Graterford.  Id. at 9.

In order for liability to attach under § 1983, "plaintiff must show that each [defendant] personally participated in the alleged constitutional violation or approved of it."  Gannaway v. Prime Med., Inc., 150 F. Supp. 3d 511, 546 (E.D. Pa. 2015) (citing C.N. Ridgewood Bd. of Educ., 430 F.3d 159, 173 (3d Cir. 2005)).  Plaintiff can demonstrate personal involvement "through allegations of personal direction or of actual knowledge and acquiescence."  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).

Upon review, Count IV against Cross should not be dismissed. Although the failure to properly investigate a grievance is not sufficient to establish personal involvement, Plaintiff's allegations go beyond her failure to investigate. See Fennell v. Wetzel, No. 4:17-cv-1520, 2019 WL 1264898, at *9 (M.D. Pa. Jan. 18, 2019), *report & recommendation adopted*, 2019 WL 1255183 (M.D. Pa. Mar. 19, 2019) (holding that "an officer's failure to investigate a grievance does not give rise to § 1983 liability," and therefore plaintiff failed to allege the requisite personal involvement to state a claim). Here, Plaintiff alleges that Cross imposed disciplinary measures in order to retaliate against Plaintiff for filing his prior lawsuit. ECF No. 45 ¶ 54. Courts have found that issuing a misconduct in retaliation for an inmate's exercise of his First Amendment rights can give rise to a retaliation claim. See, e.g., Watson v. Rozum, 834 F.3d 417 (3d Cir. 2016). Because Cross issued the misconduct at issue in this case, Plaintiff sufficiently pleads her personal involvement in the alleged wrong.

The Court should dismiss Count IV against Wood. Plaintiff does not argue that Wood personally retaliated against Plaintiff; instead, he argues that Wood knew that Hollowood had lied about the February 25, 2019 incident, and yet he "went along" with the "flawed grievance process" that resulted in Plaintiff's solitary confinement. ECF No. 45 ¶¶ 54-55; ECF No. 55 at 9.

Plaintiff appears to argue, then, that Wood can be held liable because he had knowledge of, and therefore acquiesced to, the alleged retaliatory misconduct issued by Cross. In order to demonstrate a defendant's personal involvement, however, "[a]cquiescence requires both contemporaneous knowledge of the alleged wrongdoing and direct supervisory authority over the subordinate actor." Gannaway, 150 F. Supp. 3d at 546 (citing Rode, 845 F.2d at 1207-08). Here, Plaintiff does not allege that Wood had contemporaneous knowledge of the retaliatory misconduct and that he had supervisory authority over Cross or others involved in its issuance. He therefore

does not plead facts demonstrating Wood's personal involvement with respect to Count IV. Accordingly, the Motion to Dismiss should be granted to the extent it seeks to dismiss Count IV against Wood.

### 4. Tort Claims (Counts VI and VII)

Finally, Defendants argue that Plaintiff's tort claims for battery and intentional infliction of emotional distress at Counts VI and VII against Defendants Hollowood, Sheldon, Gaffey and Macias should be dismissed because state employees acting within the scope of their employment are immune from state law tort claims. ECF No. 51 at 6. In response, Plaintiff contends that sovereign immunity does not apply, because the misconduct at issue was beyond the scope of their employment. ECF No. 55 at 13.

Under Pennsylvania law, the Commonwealth and its employees have broad immunity from most state-law tort claims. Fennell v. Wetzel, No. 4:17-cv-1520, 2019 WL 1264898, at *10 (M.D. Pa. Jan. 18, 2019) (citing 1 Pa. Const. Stat. § 2310) ("the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity"); see also Moore v. Commonwealth, 538 A.2d 111, 115 (Pa. Commw. Ct. 1988) ("In other words, if the Commonwealth is entitled to sovereign immunity under Act 152, then its officials and employees acting within the scope of their duties are likewise immune"). This immunity "applies to Commonwealth employees in both their official and individual capacities, so long as the employees are 'acting within the scope of their duties.'" Larsen v. State Employees' Ret. Sys., 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008). "Conduct of an employee is within the scope of employment if 'it is of a kind and nature that the employee is employed to perform; [and] it occurs substantially within the authorized time and space limits . . . .'" Fennell,

16

2019 WL 1264898, at *10 (quoting Brautigan v. Fraley, 684 F. Supp. 2d 589, 593-94 (M.D. Pa. 2010)) (internal quotations omitted).

Courts in the Third Circuit have held, however, that intentionally tortious conduct which is "'unprovoked, unnecessary, or unjustified by security concerns or penological goals' does not fall within the scope of employment for purposes of sovereign immunity." Id. at *11 (citing Wesley v. Hollis, No. 03-3130, 2007 WL 1655483, at *15 (E.D. Pa. June 6, 2007); R.B. Hollibaugh, No. 1:16-cv-663735, 2017 WL 663735, at *16 (M.D. Pa. Feb. 1, 2017), *report & recommendation adopted*, 2017 WL 661577 (M.D. Pa. Feb. 17, 2017) (several correctional officers denied sovereign immunity when they allegedly physically assaulted the plaintiff based on racial animus); Savage v. Judge, No. 05-2551, 2007 WL 29283, at *5 (E.D. Pa. Jan. 2, 2007) (correctional officer not entitled to sovereign immunity on allegation that he assaulted an inmate to prevent him from testifying in a case against multiple correctional officers); Velykis v. Shannon, No. 1:cv-06-0124, 2006 WL 3098025, at *3-4 (M.D. Pa. Oct. 30, 2006) (correctional officer not entitled to sovereign immunity when he allegedly slammed the door of a transport van shut on the plaintiff's head)).

Plaintiff's allegations, if true, demonstrate that Defendants did not act within the scope of their duties when they physically assaulted Plaintiff. Although correctional officers maintain security within prisons, Plaintiff claims that Defendants' attack was unprovoked by any misconduct on his part, and that he was assaulted on the basis of his race and in retaliation for his prior lawsuit. Because there are factual questions concerning whether these Defendants acted outside the scope of their employment at the time of the alleged misconduct, the Court should not dismiss Counts VI and VII at this initial stage of the litigation.

### D.  CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss, ECF No. 50, be granted in part and denied in part.  The following claims should be dismissed:

1. Count V against Defendants Wood, House, Capozza, Varner, Inniss, Pierce and Cross; and,

2. Count IV against Wood.

These claims should be dismissed without prejudice, with leave to amend as appropriate. See Phillips v. Cnty of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008) ("If a complaint is vulnerable to Rule 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile.").  The Motion to Dismiss should be denied in all other respects.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.  Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).  Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Dated:  January 26, 2021                    Respectfully submitted,


    */s/ Maureen P. Kelly*_____
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

18

cc:    The Honorable Robert J. Colville,
       United States District Judge

       All counsel of record via electronic filing.