**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MICHAEL SHERMAN ALLEN,⁣      )
                               )
        Plaintiff,           )      Civil Action No. 19-1258
                               )      District Judge Robert J. Colville
        v.                )      Magistrate Judge Maureen P. Kelly
                               )
SECRETARY JOHN WETZEL, REGIONAL   )
SECRETARY TREVOR WINGARD,      )      Re: ECF No. 142
SUPERINTENDENT ERIC ARMEL, CO     )
ROBERT HOLLOWOOD, CO PAUL        )
GAFFEY, SGT. CHRISTOPHER SHELDON,  )
LIEUT. POSKA, LIEUT. DAILEY, LIEUT.   )
RUSNAK, CO JUAN MACIAS, CO        )
MERRILL, CO WHEELER, CO DORAN,   )
CO HOLT, CO EICHER, CO RUBISH, CO   )
HIRAK, CO CUMMINGS, and JOHN and  )
JANE DOES,                   )
                               )
        Defendants.      )

<u>**REPORT AND RECOMMENDATION**</u>

## I.    RECOMMENDATION

This is a counseled prisoner civil rights action filed by Plaintiff Michael Sherman Allen ("Plaintiff"), an inmate incarcerated at the State Correctional Institution at Dallas ("SCI-Dallas"). Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983, 1985 and 1986 arising out of allegations that prison officials at the State Correctional Institution at Fayette ("SCI-Fayette") used excessive force and retaliated, conspired, and discriminated against him in violation of his First, Eighth and Fourteenth Amendment rights. ECF No. 96.

Presently before the Court is a Motion for Summary Judgment filed by Defendants Robert Hollowood ("Hollowood"), Paul Gaffey ("Gaffey"),[1] Christopher Sheldon ("Sheldon"), Lieut. Poska ("Poska"), Lieut. Dailey ("Dailey"), Lieut. Rusnak ("Rusnak"), Juan Macias ("Macias"), CO Merrill ("Merrill"), CO Wheeler ("Wheeler"), CO Doran ("Doran"), CO Holt ("Holt"), CO Eicher ("Eicher"), CO Rubish ("Rubish"), CO Hirak ("Hirak"), CO Cummings ("Cummings"), John Wetzel ("Wetzel"), Trevor Wingard ("Wingard"), and Eric Armel ("Armel") (collectively, "Defendants").  ECF No. 142.  For the following reasons, it is respectfully recommended that the Motion for Summary Judgment be granted in part and denied in part.

## II.    REPORT

### A.  FACTUAL AND PROCEDURAL BACKGROUND

#### 1.  Factual Background

##### a.  The Parties

Plaintiff is an African-American inmate.  ECF No. 96 ¶ 3.  His claims arise out of events that occurred while he was incarcerated at SCI-Fayette.  ECF No. 141 ¶ 2.

During the relevant time, Defendants were employees of the Pennsylvania Department of Corrections ("DOC").  Wetzel was the Secretary of the DOC.  Id. ¶ 3.  Wingard was the Deputy Secretary of the Western Region for the DOC.  Id. ¶ 4.

Except for Wingard and Wetzel, all other Defendants worked at SCI-Fayette.  Hollowood, Gaffey, Macias, Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and Cummings were Corrections Officers.  Id. ¶ 6.  Sheldon was a Sergeant.  Id. ¶ 7.  Poska, Dailey and Rusak were Lieutenants.  Id. ¶ 8.  Armel was the Superintendent of SCI-Fayette.  Id. ¶ 5.

---

[1] Defendants filed a Suggestion of Death indicating that Gaffey died on January 8, 2022.  ECF No. 139 ¶ 1.  No response to this document or motion to substitute Gaffey was filed.  As a result, the Court dismissed claims against Gaffey with prejudice on April 18, 2022.  ECF No. 147.

Other than Hirak and Sheldon, Plaintiff did not have prior relationships with any of the named Defendants before the alleged use of excessive force on February 25, 2019.  Id. ¶ 11.

### b. SCI-Graterford Lawsuit

Plaintiff previously filed a lawsuit in 2015 against various prison officials arising out of an alleged assault at the State Correctional Institution at Graterford (the "SCI-Graterford lawsuit"), where he was formerly incarcerated.  Id. ¶ 9; Allen v. Settle, No. 2:15-cv-4011 (E.D. Pa. 2015). While that lawsuit was pending, one of the defendants, Edward Settle ("Settle"), died.  ECF No. 96 ¶ 24.  The case resolved before trial.  Id.  No Defendants in this action were parties in the SCI-Graterford lawsuit.  ECF No. 141 ¶ 9.

Plaintiff was transferred to SCI-Fayette in 2015.  ECF No. 96 ¶ 25.  After his transfer, he discussed the incident at SCI-Graterford with Hirak.  ECF No. 141 ¶ 10.  Plaintiff testified that various individuals at SCI-Fayette called him a "rat," "snitch" and "scumbag," and that he believes he suffered harassment as a result of the SCI-Graterford lawsuit.  ECF No. 141-2 at 38, 60.

### c. February 25, 2019 Incident

Plaintiff uses a CPAP machine to breathe at night.  ECF No. 141 ¶ 92.  Hollowood and Macias testified that they received information from the security lieutenant that Suboxone, a contraband substance, might be hidden in Plaintiff's CPAP machine.  Id. ¶ 14.  On February 25, 2019, Hollowood and Macias entered Plaintiff's cell to conduct an investigative search, while Gaffey stood outside the cell.  Id. ¶ 16.

At the time, Plaintiff was on the phone with his pastor in another room.  Id. ¶ 85.  When Plaintiff saw the prison officials enter his cell, he ended the call and returned to his cell.  Id. ¶ 17. According to Plaintiff, Sheldon followed him back to his cell.  Id. ¶ 90.

Gaffey stopped Plaintiff from entering his cell and performed a pat-down search of Plaintiff.  Id. ¶¶ 18-19.  An altercation ensued, resulting in various injuries to Plaintiff.  Those events were captured as follows by an external security camera (without audio).[2]

| | |
|---|---|
| 19:08:16 | Video begins.  Plaintiff is standing outside of his cell with Gaffey and Sheldon.  Plaintiff is facing away from his cell, towards Gaffey.  Sheldon is observing from the back, right-hand side. |
| 19:08:18-28 | Plaintiff turns around to face his cell and raises his arms parallel to the ground.  Gaffey conducts a pat-down search of Plaintiff's upper body and waist. |
| 19:08: 29-30 | Plaintiff lowers his arms and points inside his cell.  Plaintiff appears to speak to someone inside his cell. |
| 19:08:31-43 | Plaintiff turns around towards Gaffey and then resumes his position facing his cell.  He then turns to the side and lowers his outer pair of sweatpants.[3]  At this point, Plaintiff's hands are down by his side. |
| 19:08:44-45 | Plaintiff bends his left arm slightly.  Hollowood emerges from the cell and grabs Plaintiff's left arm. |
| 19:08:46- 55 | Plaintiff pulls his arm away from Hollowood and appears to say something.  A struggle ensues, with Sheldon grabbing Plaintiff from behind, and Sheldon, Hollowood and Macias encircling Plaintiff in an apparent attempt to detain him. |
| 19:08:55-59 | Hollowood presses his left arm against Plaintiff's throat area. |
| 19:09:00-20 | After Plaintiff briefly breaks free from Hollowood's arm, Hollowood grabs at Plaintiff's throat area.  Hollowood then presses his arm into and against Plaintiff's throat area. |

---

[2] The following description is based on the Court's review of the video footage provided at Exhibit I of the parties' Joint Appendix.  The parties have not identified who appears in the video.  When possible, the Court has identified these individuals based on facts included in the parties' Joint Statement of Material Facts and other exhibits in the record.

[3] Inmates often wear multiple pairs of sweatpants for warmth.  Because Gaffey noticed that Plaintiff was wearing more than one pair of pants, he instructed Plaintiff to drop the outer pair so that he could check the pockets of the inner one.  ECF No. 141 ¶ 20.

| 19:09:20-43 | Plaintiff, Sheldon, Gaffey and Hollowood collectively fall to the floor in a pile.  While in the pile, Plaintiff is obscured from the camera, and it is unclear what is happening.  Another unidentified prison official arrives. |
| --- | --- |
| 19:09:44-52 | Six more unidentified prison officials arrive at the scene. |
| 19:10:02-11 | A second wave of six additional unidentified prison officials arrive at the scene. |
| 19:12:29-19:14:12 | The pile disperses, and Plaintiff is brought to his feet.  A spit hood is placed over his head. |
| 19:14:13-25 | Multiple prison officials guide Plaintiff down the stairs to the bottom floor of the unit.  He appears to stumble and have trouble remaining upright on the way down. |
| 19:14:25-19:20-15 | After Plaintiff reaches the bottom of the stairs, he falls or lays on the ground.  He then appears to suffer a seizure.  Several prison officials hold him to the ground. |
| 19:20:23-19:22-55 | Prison officials assist Plaintiff into a wheelchair and then escort him from the unit in the wheelchair. |

ECF No. 141-1 at Exhibit I.

Based on the Court's review, it is unclear from the video why Hollowood grabbed Plaintiff's arm, what was said just before and during the altercation, and what exactly occurred during the several minutes that Plaintiff and other correctional officers were piled into the floor. Those facts are in dispute.

According to Plaintiff, he noticed Hollowood mishandling his CPAP machine and asked him to be easy with it. ECF No. 141 ¶¶ 91, 93.  Hollowood responded, "I'm a fucking American, I will do whatever the fuck I want," and he called Plaintiff the "n-word." Id. ¶¶ 93-94.  Plaintiff also asked to be present while his cell was searched, which he believed he had a right to do under DOC policy.  Hollowood instructed him to remain outside the cell. Id. ¶¶ 95-97.

During the pat-down search, Gaffey told Plaintiff he did not have to strip completely down, however, he would need to remove and hand over anything in his pockets.[4]  Id. ¶¶ 102-03.  When Plaintiff reached into his pocket to grab his cigarette and lighter, Hollowood shouted "this fucking [n-word]" and ran out of Plaintiff's cell.  Id. ¶¶ 104-05.  Hollowood grabbed Plaintiff by his neck and began choking him.  Id. ¶ 106.  Plaintiff asked Sheldon to intervene and expressed his fear that Hollowood would kill him, but Sheldon and other prison officials refused to help him.  Id. ¶¶ 107-08.

 At some point, Hollowood falsely claimed that Plaintiff hit him, again referring to him as the "n-word."  Id. ¶¶ 110-11.  Other corrections officers ran in to help, and many jumped on top of him—causing him to fall to the ground.[5]  Id. ¶¶ 112-13.  Corrections officers kicked Plaintiff in the head, and at least one shouted to "break the [n-word's] fingers."  Id. ¶¶ 114-15.  Plaintiff felt crushed under the officers, and he went in and out of consciousness.  Id. ¶¶ 116-17.

According to Defendants, Plaintiff did not fully cooperate with Gaffey's pat-down search.  Id. ¶¶ 21-23.  Hollowood testified that Plaintiff kept dropping his arms and turning around to argue with Gaffey.  Id. ¶ 23.  When Plaintiff reached towards his pocket, Hollowood believed that he saw Plaintiff reach in to grab a chunk of wood.[6]  Id. ¶ 26.  He grabbed Plaintiff's arm to prevent him from attacking Gaffey.  Id. ¶ 27.  At that point, Plaintiff was "being combative," not complying with orders, and was pushing Hollowood forward into the railing.  Id. ¶¶ 28-29.  Hollowood instructed Macias to make a radio call for help, which resulted in all available personnel responding

---

[4] Plaintiff testified that he believed Macias was conducting the pat-down search.  ECF No. 141 ¶ 100.  However, the parties agree that Gaffey conducted the pat-down search and that Macias entered Plaintiff's cell to conduct the investigative search.  Id. ¶¶ 16, 19.  Gaffey also testified that he conducted the pat-down search.  ECF No. 141-5 at 13.

[5] Based on the video, it appears that Plaintiff was already on the ground when additional prison officials arrived at the scene.

[6] It is undisputed that a piece of wood was not recovered from the scene.  ECF No. 141 ¶ 26.

to the scene.  <u>Id.</u> ¶¶ 30-33.  Defendants deny that anyone used racial slurs during the incident.  <u>Id.</u> ¶¶ 76-84.

Based on this, it is undisputed that Macias, Hollowood, Sheldon, and Gaffey were present during the investigative cell search and underlying altercation.  As for Defendants Merrill, Wheeler, Doran, Holt, Eicher, Rubish and Hirak, the parties agree only that they "responded" in some fashion to the altercation.  <u>Id.</u> ¶ 50.  There is no evidence they were present during the altercation and, if so, what they did.[7]

### d.  Escort and medical treatment

After the February 25, 2019 incident, Plaintiff was escorted off the housing block to be assessed by medical providers.  <u>Id.</u> ¶ 52.  Holt, Doran and Rush participated in the escort, with Rubish operating a handheld camera that recorded the trip.[8]  <u>Id.</u> ¶¶ 58-60.  The medical note from this visit states:

> Inmate alert and oriented x3.  VS 132/82, HR 98, SaO2 97% RA, RR 18.  Edema and bruising noted to right side of face and right orbital area.  No noted laceration.  No noted deformity to chest.  Lung sounds clear bilaterally.  Denies other injuries.  No other voiced complaints.  No apparent distress at this time.

<u>Id.</u> ¶ 65.

X-rays were also requested for Plaintiff's chest, left rib, and bilateral orbital.  <u>Id.</u> ¶ 66.  After Plaintiff was assessed, he was placed in a psychiatric observation cell to be monitored over the next several days.  <u>Id.</u> ¶ 61.

---

[7] It is undisputed that other Defendants did not identify these individuals in video footage of the incident.  ECF No. 141 ¶ 51. The parties do not refer the Court to other evidence of record placing these individuals during the altercation, and the record does not contain deposition testimony or statements from these individuals.

[8] Video footage of the escort, medical assessment and subsequent placement of Plaintiff in a psychiatric observation cell are included in the record.

Medical personnel reported on Plaintiff's condition as follows on February 26, 2019:

> [H]e is refusing vitals and assessment at this time.  [R]espirations easy moving about in the bed freely.  [N]o apparent issues at this time.  [I]nmate will have xrays done in the am.

Id. ¶ 67.

On February 27, 2019, an additional x-ray was ordered for Plaintiff's right hand.  Id. ¶ 68. The medical note for this date states:

> Inmate laying down.  Up to get meds.  Compliant with meals.  Orbit still swollen. X-rays negative.  No voiced complaints.  No apparent distress.

Id. ¶ 69.

Medical personnel also saw Plaintiff on March 1 and 5, 2019.  Id. ¶¶ 70-72.  It was reported, "x-rays all normal and no fractures."  Id. ¶ 71.  On March 5, 2019, Plaintiff indicated that his wrist hurt and that he had severe headaches.  Id. ¶ 72.

### e.  Post-Incident Investigation/Misconduct

Gaffey issued a misconduct to Plaintiff arising out of the February 25, 2019 incident for failure to obey an order and assault.  Id. ¶ 73.  Hearing Examiner Kerri Cross found Plaintiff guilty and sanctioned him to 30 days in disciplinary custody.  Id. ¶¶ 74-75.

In response to a grievance that Plaintiff filed, Lieutenant Wood of the SCI-Fayette Security Office separately investigated the February 25, 2019 incident.  ECF No. 141-18 at 2.  Based on the results of this investigation, the Bureau of Investigations and Intelligence ("BII") concurred with findings that "there appears to be evidence to substantiate Inmate Allen's allegation of Inmate abuse," in particular, "improper force was used during this incident by Officer Hollowood" when he placed his forearm in Plaintiff's "neck area."  Id. at 7-8.

### 2.   Legal Claims

In the operative Third Amended Complaint, Plaintiff brings eight claims: Count I: Excessive Force in Violation of the Eighth Amendment (against Hollowood, Sheldon, Macias, Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak, Cummings); Count II: Equal Protection (against Hollowood, Sheldon, Macias, Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and Cummings); Count III: Denial of Adequate Medical Care in Violation of the Eighth Amendment (against all Defendants); Count IV: Retaliation (against Hollowood, Sheldon, Macias, Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and Cummings)[9]; Count V: Federal Civil Conspiracy and Failure to Prevent Conspiracy under 42 U.S.C. §§ 1985(3) and 1986 (against all Defendants); Count VI: Battery (against Hollowood, Sheldon, Macias, Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and Cummings); Count VII: Intentional Infliction of Emotional Distress (against Hollowood, Sheldon, Macias, Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and Cummings); Count VIII: Violations of Eighth and Fourteenth Amendments (against Wetzel, Wingard and Armel).[10]  ECF No. 96 ¶¶ 84-167.

### 3.   Procedural History

Plaintiff initiated this action *pro se* on September 17, 2019 by filing a Motion for Leave to Proceed *in forma pauperis* ("IFP Motion").  The Court granted Plaintiff's IFP Motion on November 19, 2019, and his Complaint was filed the same day.  ECF Nos. 4 and 5.

Defendants filed an Answer and moved for judgment on the pleadings.  ECF Nos. 19 and 27.  Plaintiff then requested leave to amend his Complaint, which the Court granted, rendering the Motion for Judgment on the Pleadings moot.  ECF Nos. 34, 35 and 36.

---

[9] Plaintiff also refers to former Defendant Kerri Cross in Count IV, but she is not named as a Defendant in his Third Amended Complaint.  ECF No. 96 ¶¶ 125-126.

[10] Plaintiff also brought all claims except Count VIII against Gaffey, who has since been dismissed.

Plaintiff subsequently retained counsel, and he filed an Amended Complaint on October 5, 2020.  ECF Nos. 42 and 45.

Defendants moved to dismiss Plaintiff's Amended Complaint on November 9, 2020.  ECF No. 50.  Upon review of the parties' submissions, the undersigned issued a Report and Recommendation, recommending that the Motion to Dismiss be granted in part and denied in part, and that certain claims be dismissed with leave to amend.  ECF No. 56.  United States District Judge Robert J. Colville adopted the Report and Recommendation on February 19, 2021, granting Plaintiff leave to amend his complaint within 21 days.  ECF No. 57.

Plaintiff did not amend his complaint within 21 days, and Defendants filed an Answer to the First Amended Complaint.  ECF No. 67.  The Court issued a scheduling order, with fact discovery to be completed by July 29, 2021.  ECF No. 66.

On April 21, 2021, Plaintiff requested leave to amend his Complaint to incorporate new allegations and Defendants.  ECF No. 69.  The Court granted Plaintiff's request, and he filed his Second Amended Complaint on April 28, 2021.  ECF No. 79.

 The parties filed three joint motions to extend the time for fact discovery, which the Court granted.  ECF Nos. 85, 87, 90, 91, 111 and 113.  Based on this, fact discovery was to be completed by October 14, 2021.  ECF No. 113.  However, the Court extended discovery for the sole purpose of completing Plaintiff's deposition by November 23, 2021.   ECF No. 121.

On July 27, 2021, Plaintiff requested leave to file a Third Amended Complaint, which the Court granted.  ECF Nos. 93 and 95.  He filed the operative Third Amended Complaint on July 28, 2021.  ECF No. 96.

Defendants filed another Motion to Dismiss relative to Plaintiff's Third Amended Complaint. ECF No. 99.[11]  After consultation with the parties, the Court entered the following order deferring ruling on Defendants' Motion to Dismiss pending the Court's ruling on this Motion for Summary Judgment.

> ORDER deferring ruling on [99] Corrections Defendants' Motion to Dismiss for Failure to State a Claim.  Consistent with the discussion with the Court at the status conference on 12/1/21, and the agreement of the parties, given the procedural posture of this case and in the interests of judicial efficiency, any issues raised in the Motion to Dismiss will be raised by Defendants in their upcoming motion for summary judgment.  The Court will address such issues in ruling on the motion for summary judgment.

ECF No. 134.

### 4.  Motion for Summary Judgment

Defendants filed this Motion for Summary Judgment and Brief in Support on March 24, 2022. ECF Nos. 142 and 143.  The parties filed a Joint Statement of Material Facts Not in Dispute ("Joint Statement of Material Facts"), together with a supporting Appendix. ECF No. 141.  In the Joint Statement of Material Facts, the parties include certain facts that are agreed to by all parties, together with facts proposed only by Defendants or Plaintiff.

On April 22, 2022, Plaintiff filed a Brief in Opposition to the Motion for Summary Judgment and Response to the Joint Statement of Material Facts and to the Defendants' Statement of Material Facts.  ECF Nos. 148 and 149.

Defendants then filed a Reply Brief, along with a Response to Plaintiff's Response to the Joint Statement of Material Facts and to Defendants' Statements of Material Facts.  ECF Nos. 150 and 151.

The Motion for Summary Judgment is now ripe for consideration.

---

[11] This motion was re-docketed as an errata at ECF No. 102 because it was improperly filed on behalf of terminated defendants.

**B.  LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof").  Thus, summary judgment is warranted where, "after adequate time for discovery and upon motion . . . a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case.  Celotex, 477 U.S. at 322; Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004).  "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts

in favor of the nonmoving party.  Matreale v. N.J. Dep't of Mil. & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001).

### C.  DISCUSSION

#### 1.  Eighth Amendment Excessive Force claim (Count I)

Defendants move for summary judgment as to Count I against Defendants Poska, Dailey, Rusnak, Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak, Cummings, Wetzel, Armel, Sheldon and Wingard based on their lack of personal involvement in the alleged assault and/or Plaintiff's failure to plead Count I against these Defendants.  ECF No. 143 at 5-7.

In response, Plaintiff concedes that he does not plead Count I against Wetzel, Wingard and Armel, so they are not liable for this claim.  ECF No. 148 at 5 n. 1.  As for Poska, Dailey, Rusnak, Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and Cummings, Plaintiff asserts in a sub-heading that these Defendants "participated in the 2/25/19 brutal and unjustified assault on Mr. Allen," but he does not refer the Court to supporting evidence or provide any further explanation or argument relative to these Defendants.  Id. at 4.  Plaintiff does not specifically address Defendants' argument relative to Sheldon for Count I, but he generally argues that Sheldon participated in a pre-planned conspiracy to unlawfully abuse him.  Id. at 16-18.

In Count I, Plaintiff brings his Eighth Amendment excessive force claim under 42 U.S.C. § 1983.  He claims that:

> 88.  On or about February 25, 2019, Defendants Hollowood, Sheldon, Gaffey, Macias, Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and/or Cummings viciously assaulted Plaintiff.

> 89.  Defendants' vicious assault was unprovoked and unjustified; rather, it was motivated by the Defendants' malice and desire to cause Plaintiff serious bodily harm.

90. Defendants' vicious assault was excessive and cruel and violated Plaintiff's Eighth amendment rights.

ECF No. 96 ¶¶ 88-90.

In a civil rights claim, as here, individual government defendants must have personal involvement in the alleged wrongdoing and "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds*, Taylor v. Barkes, 135 S.Ct. 2042 (2015) (quoting Bistrian v. Levi, 696 F.3d 352, 366 (3d Cir. 2012)); see also Millbrook v. United States, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014). "Rather, state actors are liable only for their own unconstitutional conduct." Barkes, 766 F.3d at 316.

Although supervisors cannot be held liable pursuant to a theory of *respondeat superior*, the United States Court of Appeals for the Third Circuit has identified "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." Id. First, a supervisor may be personally liable under § 1983 if he "'participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct." Id. (quoting Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995)). Second, a supervisor-defendant is liable if he "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Id. (quoting A.M. ex rel. J.M.K. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)).

### a. Wetzel, Wingard, Armel, Poska, Dailey and Rusnak

Upon review, Plaintiff has not expressly alleged Count I against Defendants Wetzel, Wingard, Armel, Poska, Dailey or Rusnak (and concedes this fact as to Wetzel, Wingard and Armel). He does not identify these Defendants in any capacity in Count I, nor does he claim in

14

his Third Amended Complaint that any of these Defendants used excessive force.  See ECF No. 96 ¶¶ 84-91.

Simply put, Plaintiff is the "master of [his] complaint," and he chooses which claims and theories of recovery to plead.  Summy-Long v. Pa. State Univ., 226 F. Supp. 3d 371, 387-88 (M.D. Pa. 2016), aff'd, 715 F. App'x 179 (3d Cir. 2017).  Plaintiff may not defeat summary judgment by asserting a claim [he] did not include in [his] Complaint.  Id.  "Rather, '[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a)."  Id. (quoting Tucker v. Union of Needletrades, Indus. & Textile Employees, 407 F.3d 784, 788 (6th Cir. 2005)).  Because Plaintiff does not plead Count I against Wetzel, Wingard, Armel, Poska, Dailey or Rusnak, it is not necessary to consider this claim for those Defendants.

### b.  Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and Cummings

Upon review, the Court should grant the Motion for Summary Judgment as to Count I against Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and Cummings based on their lack of personal involvement.  Based on the record, there is no evidence these Defendants participated in the use of force against Plaintiff.   These individuals only "responded the altercation" and, as to Eicher, Doran and Rubish, participated in Plaintiff's escort to the medical unit.  ECF No. 141 ¶¶ 50, 58, 59 60, 64.  The parties proffer no evidence related to Cummings, except that he was a corrections officer employed by the DOC.  Id. ¶ 6.  Therefore, summary judgment should be granted as to Count I against Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and Cummings.

### c.  Sheldon

As for Sheldon, however, there is sufficient evidence of his personal involvement to withstand summary judgment.  Plaintiff testified that Sheldon was a supervisor.  ECF No. 141-2

at 84.  In video footage of the incident, Sheldon can be seen restraining Plaintiff while Hollowood presses his arm against Plaintiff's throat.  Based on this evidence, a jury could find that Sheldon "participated in violating the plaintiff's rights . . . or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."   Barkes, 766 F.3d at 316. Therefore, the Motion for Summary Judgment should be denied relative to Count I against Sheldon.

### 2.   Fourteenth Amendment Equal Protection Claim (Count II)

Plaintiff also brings a claim for violation of the Equal Protection Clause of the Fourteenth Amendment against Hollowood, Sheldon, Gaffey, Macias, Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and Cummings.[12]  ECF No. 96 ¶¶ 92-103.  Plaintiff claims that the February 25, 2019 assault was motivated by racial discrimination.  Id. ¶¶ 97-100.

Defendants move for summary judgment relative to Plaintiff's equal protection claim, arguing that the record does not suggest that the February 25, 2019 incident was racially motivated. ECF No. 143 at 9.  Rather, they argue, this incident arose out of a typical investigative cell search, and there is no evidence of any pervasive or severe use of racially derogatory language.  Id. at 9-10.  Defendants also argue that Plaintiff knew only two of the Defendants, Hirak and Sheldon, before the incident, and he did not testify they showed any racial animus.  Id. at 9.  As for Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and Cummings, Defendants also argue that summary judgment is proper based on their lack of personal involvement.  Id. at 5-6.

In response, Plaintiff points to evidence that Hollowood repeatedly used the "n-word" during the February 25, 2019 incident.  ECF No. 148 at 12-13.  Plaintiff also argues there is

---

[12] Defendants move for summary judgment on this claim for all Defendants.  However, Plaintiff only specifically pleads this claim against Defendants Hollowood, Sheldon, Gaffey, Macias, Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and Cummings.  ECF No. 96 ¶¶ 95-103.  Thus, the Court limits its analysis to Plaintiff's claims against the named Defendants.

evidence of "rampant racism" at the prison, including a culture of monitoring Black inmates while talking to White female DOC employees and labeling those White female employees as "[N-word] lovers," instances of referring to various Black individuals by other racially-derogatory names, and hanging pictures of former President Donald Trump.  Id.; see also ECF No. 141 ¶¶ 139-144.

The Equal Protection Clause of the Fourteenth Amendment provides that "no state shall 'deny to any person within its jurisdiction the equal protection of the law,' which is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985).  To establish an equal protection violation, Plaintiff must show that "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Wilson v. Taylor, 515 F. Supp. 2d 469, 472 (D. Del. 2007).

### a.   Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and Cummings

Upon review, the Court should grant the Motion for Summary Judgment relative to Plaintiff's claim in Count II against Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and Cummings based on their lack of personal involvement.  Plaintiff's claim arises out of the alleged assault on February 25, 2019.  As discussed, the record does not reflect these Defendants were personally involved in the assault.

### b.   Hollowood, Sheldon and Macias

As for Hollowood, Sheldon and Macias, however, the Court should deny the Motion for Summary Judgment with respect to Count II.  As discussed, there is evidence these Defendants were involved in the alleged attack.  Plaintiff also presents evidence from which a jury could reasonably conclude that the attack was racially motivated.  There is evidence that Hollowood and an unidentified individual repeatedly used the "n-word" as he assaulted Plaintiff, and he points to

evidence of prior incidents of racial animus.  Because there are questions of fact as to whether Plaintiff's attack was racially motivated, the Court should deny the Motion for Summary Judgment as to Plaintiff's equal protection claim in Count II relative to Hollowood, Sheldon and Macias. See, e.g., Meronvil v. Doe, No. 17-8055, 2018 WL 295564, at *2 (D.N.J. Jan. 3, 2018) (citing Burton v. Livingston, 791 F.2d 97, 101 n. 1 (8th Cir. 1986) ("'when racially derogatory language is coupled with conduct infringing the prisoner's right to security of his person, an inference arises that the conduct was motivated by racial bias' and states a claim under the Equal Protection Clause"); Owens v. Leith, No. 06-cv-2109, 2007 WL 928139, at *5 (D.N.J. Mar. 27, 2007) ("The contention that an assault by a prison guard is racially motivated . . . states an equal protection claim")).

### 3.   Denial of Adequate Medical Care (Count III)

In Count III, Plaintiff brings a claim for denial of adequate medical care under the Eighth Amendment against all Defendants.  In support of the Motion for Summary Judgment, Defendants assert they were not deliberately indifferent to Plaintiff's medical care, arguing that he was provided with medical care after the incident, and that Rusnak notified medical professionals that Plaintiff was "flopping around" after the attack.  ECF No. 143 at 10-12.

In response, Plaintiff argues that Defendants are improperly attempting to minimize the nature of his injuries.  ECF No. 148 at 14.  While Plaintiff was checked by a nurse, he argues, he was not taken to the medical department or infirmary, and instead he was placed in a suicide observation cell.  Id.  Despite suffering a seizure after the attack, Plaintiff argues, he did not receive a comprehensive medical evaluation, and he was not in any physical condition to complain about his ailments.  Id.  Plaintiff also argues that medical personnel did not ask him directly about his medical condition, relying instead on information from Defendants.  Id.

In the medical context, prison officials violate the Eighth Amendment when they are deliberately indifferent to an inmate's serious medical needs.  Estelle v. Gamble, 429 U.S. 97 (1976).  Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain."  Id. at 103 (quoting Gregg v. Georgia, 428 U.S. 153, 173(1976)).  "Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, . . . or 'persistent conduct in the face of resultant pain and risk of permanent injury.'"  Josey v. Beard, No. 06-265, 2009 WL 1858250, at *6 (W.D. Pa. June 29, 2009) (citing Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990) (internal citations omitted)).

"Mere misdiagnosis or negligent treatment is not actionable under § 1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation."  Id. (citing Estelle, 429 U.S. at 106).  "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  Williams v. Fedarko, 807 F. App'x 177, 180 (3d Cir. 2020) (quoting United States ex rel. Walker v. Fayette Cnty., 599 F.2d 573, 575 n.2 (3d Cir. 1979)).  Thus, "deliberate indifference is generally not found when some level of medical care has been offered to the inmate."  Josey, 2009 WL 1858250, at *6 (citing Clark v. Doe, No. 99-5616, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000) ("[C]ourts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care.")).

Non-medical prison officials are not "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being

treated by the prison doctor." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (quoting Durmer, 991 F.3d at 69). Rather, if an inmate is being cared for by medical experts, "a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands." Id. Thus, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a nonmedical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Id.

Upon review, the Court should grant Defendants' Motion for Summary Judgment relative to Plaintiff's Eighth Amendment claim in Count III. Following the incident, Plaintiff was promptly seen by medical personnel for his injuries, and he received continuing care, medical testing and observation by medical professionals over the next several days. Plaintiff does not point to any evidence that Defendants knew, or had reason to believe, that Plaintiff was being mistreated. As a result, he cannot establish that Defendants were deliberately indifferent to a serious medical need. Therefore, the Court should grant the Motion for Summary Judgment against all Defendants with respect to Count III.

### 4. Retaliation (Count IV)

In Count IV, Plaintiff brings a retaliation claim under the First Amendment against Hollowood, Sheldon, Macias, Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and Cummings. Plaintiff claims that these Defendants "engaged in a campaign of harassment and physical abuse against Plaintiff as revenge for Plaintiff's [SCI-Graterford lawsuit] and CO Settle's death," and that they physically assaulted Plaintiff, destroyed his property, and targeted him for unfair discipline in retaliation for filing the lawsuit. ECF No. 96 ¶¶ 113-127.

In order to establish a prima facie claim for retaliation under the First Amendment, Plaintiff must show: (1) that "the conduct which led to the alleged retaliation was constitutionally

protected"; (2) "he suffered some 'adverse action' at the hands of the prison officials" that "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights"; and (3) a "causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (citing Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).[13]   For the reasons below, summary judgment should be granted as to Count VI because Plaintiff cannot establish the third element of a prima facie claim of retaliation.

### a. Protected Activity

As to the first element of a prima facie case, there is no dispute that Plaintiff engaged in protected activity when he filed the SCI-Graterford Lawsuit.  Thus, the first element is satisfied.

### b. Adverse Action

To establish the second element, Plaintiff must show that he "he suffered some 'adverse action' at the hands of the prison officials" that "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Rauser, 241 F.3d at 333.

As Defendants point out, Plaintiff proffers no evidence to support his claim that Defendants engaged in a prior "campaign of harassment and physical abuse" against him.  Construing the evidence in favor of Plaintiff, as the Court must, and because it is undisputed that the alleged use of excessive force on February 25, 2019 constitutes an adverse action, however, Plaintiff satisfies the second element of a prima facie case.

---

[13] If Plaintiff makes this initial showing, "the burden then shifts to the prison official to prove that the same decision would have been made absent the protected conduct for reasons related to a legitimate penological interest." DeFranco v. Wolfe, 387 F. App'x 147, 154-55 (3d Cir. 2010) (citing Rauser, 241 F.3d at 334).

### c. Causal Link

As to the February 25, 2019 incident, Plaintiff cannot establish the third essential element of his retaliation claim against Defendants—i.e., causation.  Retaliatory motive can be inferred from either: "(1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link."  Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016).   However, "[t]hese are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference."  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000) (quoting Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997)).

In this case, the timing between the SCI-Graterford lawsuit and the February 25, 2019 incident is not unusually suggestive.  Plaintiff filed the SCI-Graterford lawsuit and was transferred to SCI-Fayette in 2015.  He was not allegedly assaulted until about four years later.  As such, temporal proximity between the protected conduct and alleged retaliatory action is absent.

Plaintiff also does not point to any record evidence of a pattern of antagonism involving Defendants.  In addition, the record as a whole does not contain evidence suggestive of a retaliatory motive.  Defendants were not named or involved in the SCI-Graterford lawsuit.  There is also little or no evidence that Defendants even knew about this lawsuit.  Other than Sheldon and Hirak, there is no evidence that any Defendant had a prior relationship with Plaintiff.

Because Plaintiff cannot establish the requisite causal link between his protected activity and any adverse action, the Court should grant the Motion for Summary Judgment relative to Plaintiff's First Amendment retaliation claim in Count IV.

### 5.   Conspiracy and Failure to Prevent Conspiracy (Count V)

In Count V, Plaintiff asserts two claims: (1) conspiracy pursuant to 42 U.S.C. § 1985(3) and (2) failure to prevent conspiracy pursuant to 42 U.S.C. § 1986.  In support of the Motion for Summary Judgment, Defendants argue there is no evidence of any conspiracy, let alone a racially-motivated one.  ECF No. 143 at 15.  Defendants point out that there is no evidence they ever harassed or abused Plaintiff because of his race before the February 25, 2019 incident.  Id.  They also argue that only three of the eighteen Defendants were conducting an investigatory cell search before the incident occurred.  Those individuals had no reason to believe that Plaintiff—who was on the phone at the time—would voluntarily come back to his cell.  Id. at 15-16.  As a result, Defendants argue, it is not plausible they pre-planned any scheme to attack Plaintiff based on his race.  Id. at 16.

In response, Plaintiff argues that a jury logically could infer that Defendants Hollowood, Macias and Sheldon had a "meeting of the minds" about unlawfully searching Plaintiff's cell and then cooperating in the assault.  ECF No. 148 at 18.  Citing to allegations in his Complaint, Plaintiff argues that each Defendant had a pre-planned role, with Hollowood, Gaffey and Macias entering Plaintiff's cell while he was occupied on the phone, and Sheldon serving as a "look-out."  Id. (citing ECF No. 96 ¶ 132).  Plaintiff also argues that other Defendants did not try to dissuade or prevent them from violating his constitutional rights.  Id. at 16-18.

### a.   Conspiracy claim under § 1985(3)

The Court first addresses Plaintiff's conspiracy claim under Section 1985(3).  Section 1985(3) "was enacted to combat conspiracies motivated by racial or class-based discrimination." Bailey v. Beard, No. 3:cv-06-1707, 2008 WL 4425788, at *2 (M.D. Pa. Sept. 29, 2008) (citing Griffin v. Breckenridge, 403 U.S. 88, 91 (1971)).  Under this statute, an action may "be brought

by one injured by a conspiracy formed for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." Est. of Oliva v. N.J. Dep't of Law & Pub. Safety, Div. of State Police, 604 F.3d 788, 802 (3d Cir. 2010) (citing Thomas v. Independence Twp., 463 F.3d 285, 298 (3d Cir. 2006) (internal quotations omitted)).

Plaintiff must allege four elements to state a Section 1985(3) claim: "(1) a conspiracy; (2) motivated by a racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." Lake v. Arnold, 112 F.3d 683, 685 (3d Cir. 1997) (citing United Bhd. of Carpenters & Joinders of Am., Local 610 v. Scott, 463 U.S. 825, 828-29 (1983)).

Because "[t]he essence of a conspiracy is an agreement or concerted action between individuals," a plaintiff must allege "with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right." McNeil v. Pennsylvania, No. 3:cv-05-925, 2006 WL 618421, at *4 (M.D. Pa. Mar. 10, 2006) (citing D.R. by L.R., 972 F.2d at 1377; Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989); Young v. Kann, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991); Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 539 (E.D. Pa. 1982)).  Whether an agreement exists is resolved if "the fact-finder can infer from the circumstances or can determine from direct evidence that the alleged conspirators had a 'meeting of the minds' and 'reached an understanding [from said meeting] to achieve the conspiracy's objective.'"  Swigget v. Upper Merion Twp., No. 08-

2604, 2008 WL 4916039, at *3 (E.D. Pa. Nov. 17, 2008) (citing Jackson-Gilmore v. Dixon, No. Civ.A 04-03759, 2005 WL 3110991, at *12 (E.D. Pa. Nov. 18, 2005) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).

Upon review, Plaintiff does not argue in his Brief in Opposition to the Motion for Summary Judgment that any Defendants other than Hollowood, Macias and Sheldon participated in any underlying conspiracy.  ECF No. 148 at 17.  Based on this, the Court should grant the Motion for Summary relative to Plaintiff's § 1985(3) claim against Defendants Poska, Dailey, Rusnak, Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak, Cummings, Wetzel, Wingard and Armel.

As for Defendants Hollowood, Macias and Sheldon, the Court also should grant the Motion for Summary Judgment as to Plaintiff's § 1985(3) claim.  Conspiracy requires a "meeting of the minds."  Startzell v. City of Phila., 533 F.3d 183, 205 (3d Cir. 2008) (citing Adickes, 398 U.S. at 158).  Here, while Plaintiff illustrates that Hollowood, Macias and Gaffey planned to conduct an investigative cell search, he does not point to evidence from which a jury could infer that Defendants reached any prior agreement to use excessive force during that search.[14]  To the contrary, there is no indication they expected Plaintiff to be there.  Plaintiff testified that he was on a phone call during the search, and he ended this call prematurely to return to his cell.  Because there is not sufficient evidence from which a jury could find that Defendants engaged in a conspiracy, the Motion for Summary Judgment should be granted as to Plaintiff's § 1985 claim.

### b.  Failure to Prevent Conspiracy Claim under § 1986

"Section 1986 is a companion to § 1985(3) and provides the claimant with a cause of action against any person who, knowing that a violation of § 1985 is about to be committed and possessing power to prevent its occurrence, fails to take action to frustrate its execution."  Meronvil

---

[14] Although Plaintiff refers to the cell search, itself, as "unlawful," he does not support this argument or otherwise demonstrate that it violated Plaintiff's rights under §1985(3).

v. Doe, No. 17-cv-8055, 2018 WL 295564, at *3 (D.N.J. Jan. 3, 2018) (citing Farber v. City of Paterson, 440 F.3d 131, 137 (3d Cir. 2006)).  Thus, a claim under § 1986 requires a preexisting violation of §1985.  Clark v. Clarbaugh, 20 F.3d 1290, 1295 (3d Cir. 1994).  In order to prove a claim under § 1986, plaintiff must show that: "(1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in the preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed."  Id.

Because the record does not support Plaintiff's conspiracy claim under § 1985(3), he cannot establish a violation of § 1986.  Accordingly, the Court should grant summary judgment relative to Count V against all Defendants.

### 6. Tort Claims (Counts VI and VII)

Plaintiff brings claims under Pennsylvania law for battery (Count VI) and intentional infliction of emotional distress (Count VII) against Hollowood, Sheldon, Gaffey, Macias, Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and Cummings.  ECF No. 96 ¶¶ 140-146.

In support of the Motion for Summary Judgment, Defendants argue that Plaintiff's tort claims must be dismissed because they are entitled to sovereign immunity.  ECF No. 143 at 16-18.  Defendants contend they were acting within the scope of their duties while conducting an investigatory cell search or in responding to a call for assistance.  Id. at 18.  Defendants also argue that Plaintiff's claims against Defendants other than Hollowood and Macias fail based on lack of personal involvement.  Id. at 4 n.3.

In response, Plaintiff argues that sovereign immunity does not apply because Defendants acted outside the scope of their employment when they improperly used force against Plaintiff in a racially motivated attack.  ECF No. 148 at 18-22.

Under Pennsylvania law, the Commonwealth and its employees have broad immunity from most state-law tort claims. Fennell v. Wetzel, No. 4:17-cv-1520, 2019 WL 1264898, at *10 (M.D. Pa. Jan. 18, 2019) (citing 1 Pa. Const. Stat. § 2310) ("the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity"); see also Moore v. Commonwealth, 538 A.2d 111, 115 (Pa. Commw. Ct. 1988) ("In other words, if the Commonwealth is entitled to sovereign immunity under Act 152, then its officials and employees acting within the scope of their duties are likewise immune"). This immunity "applies to Commonwealth employees in both their official and individual capacities, so long as the employees are 'acting within the scope of their duties.'" Larsen v. State Employees' Ret. Sys., 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008). "Conduct of an employee is within the scope of employment if 'it is of a kind and nature that the employee is employed to perform; [and] it occurs substantially within the authorized time and space limits . . . .'" Fennell, 2019 WL 1264898, at *10 (quoting Brautigan v. Fraley, 684 F. Supp. 2d 589, 593-94 (M.D. Pa. 2010)) (internal quotations omitted).

Courts in the Third Circuit have held, however, that intentionally tortious conduct which is "'unprovoked, unnecessary, or unjustified by security concerns or penological goals' does not fall within the scope of employment for purposes of sovereign immunity." Id. at *11 (citing Wesley v. Hollis, No. 03-3130, 2007 WL 1655483, at *15 (E.D. Pa. June 6, 2007); R.B. Hollibaugh, No. 1:16-cv-663735, 2017 WL 663735, at *16 (M.D. Pa. Feb. 1, 2017), report & recommendation adopted, 2017 WL 661577 (M.D. Pa. Feb. 17, 2017) (several correctional officers denied sovereign immunity when they allegedly physically assaulted the plaintiff based on racial animus); Savage v. Judge, No. 05-2551, 2007 WL 29283, at *5 (E.D. Pa. Jan. 2, 2007)

(correctional officer not entitled to sovereign immunity on allegation that he assaulted an inmate to prevent him from testifying in a case against multiple correctional officers); <u>Velykis v. Shannon</u>, No. 1:cv-06-0124, 2006 WL 3098025, at *3-4 (M.D. Pa. Oct. 30, 2006) (correctional officer not entitled to sovereign immunity when he allegedly slammed the door of a transport van shut on the plaintiff's head)).

### a.  Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and Cummings

As for Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and Cummings, the Court should grant the Motion for Summary Judgment relative to Plaintiff's tort claims in Count V and VII because they are entitled to sovereign immunity.  To the extent these Defendants arguably had any involvement, they were acting in the course of their duties in responding to the February 25, 2019 alteration and its immediate aftermath.  As discussed, there is no evidence these Defendants used force against Plaintiff.

### b.  Hollowood, Macias and Sheldon

As for Hollowood, Macias and Sheldon, however, a jury could find that Defendants did not act within the scope of their duties when they physically assaulted Plaintiff.  Although correctional officers maintain security within prisons, Plaintiff claims that Defendants' attack was unprovoked by any misconduct on his part, and that he was assaulted on the basis of his race. Because there are factual questions about whether these Defendants acted outside the scope of their employment at the time of the alleged misconduct, the Court should deny the Motion for Summary Judgment on this basis with respect to Counts VI and VII against Hollowood, Macias and Sheldon.

### 7.   **Eighth and Fourteenth Amendment Claims against Wetzel, Wingard and Armel (Count VIII)**

In Count VIII, Plaintiff claims Defendants Wetzel, Wingard and Armel are liable under the Eighth and Fourteenth Amendments "for their indifference to COs' abuse of inmates, including Plaintiff, and their failure to implement policies or discipline or train DOC staff and COs."  ECF No. 96 ¶ 167.  Plaintiff claims these Defendants were indifferent to the substantial risk that correctional officers would use excessive force against Plaintiff and other inmates, and that correctional officers would violate Plaintiff's and other inmates' right to substantive due process. Id. ¶¶ 166-67.

In support of the Motion for Summary Judgment, Defendants argue that Wetzel, Wingard and Armel were not personally involved in any underlying wrong.  ECF No. 143 at 7-8. Defendants argue that Wetzel, Wingard and Armel did not participate in or have any prior knowledge of the alleged assault, or any prior pattern of abuse.  Defendants also argue that Plaintiff does not identify any policies or practices attributable to Wetzel, Wingard or Armel that caused the alleged assault.  Id.

In response, Plaintiff argues that Wetzel, Wingard and Armel are liable based on their failure to monitor, train or supervise corrections officers to protect inmates' constitutional rights. ECF No. 148 at 22-28.  He argues there is an "obvious risk" that corrections officers will physically abuse inmates.  While the DOC has policies about inmate abuse, he argues, they are "feckless statements that lack any enforcement through monitoring, supervision or training."  Id. at 24-25. This fact is evident, he argues, because prison officials attacked him in front of cameras— suggesting they did not expect to suffer any consequences.  Id. at 27.  This "failed enforcement" is, itself, a policy, custom or practice that caused constitutional harm to Plaintiff.  Id. at 25.

As discussed, a supervisor-defendant is liable if he "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Barkes, 766 F.3d at 316 (citing A.M. ex rel. J.M.K. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)).  "'Failure to' claims—failure to train, failure to discipline, or . . . failure to supervise—are generally considered a subcategory of policy or practice liability." Id.

If the claim implicates a supervisor for his deficient policies or practices, a four-part test provides the relevant framework:

> The plaintiff must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure.

Id. at 317 (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989); Brown v. Muhlenberg Twp., 269 F.3d 205 (3d Cir. 2001)).

Upon review, the Court should grant the Motion for Summary Judgment as to this claim. As for the first element, Plaintiff does not establish what policies or procedures were in effect at the time of the incident.  While Plaintiff broadly asserts that Wetzel, Wingard and Armel did not employ any training, monitoring or supervision relative to inmate abuse, he does not proffer any non-speculative evidence to support this finding.  Based on the record, a jury could not reasonably find that Wetzel, Wingard and Armel liable for their failure to implement relevant policies. Accordingly, the Court should grant the Motion for Summary Judgment as to Count VIII.

### D.  CONCLUSION

For all these reasons, it is respectfully recommended that the Motion for Summary Judgment, ECF No. 142, be granted in part as follows:

1. Count I against Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and Cummings;

2. Count II against Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and Cummings;

3. Count III

4. Count IV

5. Count V

6. Count VI against Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and Cummings;

7. Count VII against Merrill, Wheeler, Doran, Holt, Eicher, Rubish, Hirak and Cummings; and

8. Count VIII.

The Motion for Summary Judgment should be denied in all other respects.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Dated: September 7, 2022                    Respectfully submitted,


                                            */s/ Maureen P. Kelly*
                                            MAUREEN P. KELLY
                                            UNITED STATES MAGISTRATE JUDGE

cc:     The Honorable Robert J. Colville,
        United States District Judge

        All counsel of record via electronic filing.