IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL ALLEN, | : |
| | : Civil Action No. 19-1258 |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| SECRETARY JOHN WETZEL, et al., | : |
| | : |
| Defendants. | : |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(B) AND ALTERNATIVE RELIEF FOR NEW TRIAL UNDER RULE 59**

AND NOW, come Defendants Hollowood, Sheldon, and Macias ("Defendants"), by and through their attorneys Michael P. Gaetani, Senior Deputy Attorney General, and Jorden P. Colalella, Deputy Attorney General, and respectfully submit the following Motion for Judgment as a Matter of Law Pursuant to Rule 50(b) and Alternative Relief for New Trial Under Rule 59:

### I.   ARGUMENT

**A. Motion for Judgment as a Matter of Law Pursuant to Rule 50**

Federal Rule of Civil Procedure 50 governs motions for judgment as a matter of law in a jury trial. The Rule provides, in relevant part, that

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a). If the court does not grant the motion for judgment as a matter of law under Rule 50(a), no later than 28 days after the entry of judgment, the movant may file a

renewed motion for judgment as a matter of law and may include an alternative request for relief under Rule 59. Fed. R. Civ. P. 50(b).

A motion for judgment as a matter of law should be granted only if, viewing the evidence in the light most favorable to the non-movant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury could reasonably find liability. Kars 4 Kids, Inc. v. Am. Can!, 8 F.4th 209, 218 n.8 (3d Cir. 2021) (*citing* Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993)). When evaluating whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version. Id. The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party. Jaasma v. Shell Oil Co., 412 F.3d 501, 503 (3d Cir. 2005).

1. **Corrections Defendants are Entitled to Directed Verdict as to the Issue of Scope of Employment as Corrections Defendants Proved by a Preponderance of the Evidence that Defendant Hollowood was Acting Within the Scope of his Employment.**

Under Pennsylvania law, a Commonwealth employee is acting within the scope of his employment where the conduct (1) is of the kind that the employee-defendant is employed to perform; (2) occurs substantially within the job's authorized time and space limits; (3) is motivated at least in part by a desire to serve the employer; and (4) if force is used by the employee against another, the use of force is not unexpectable by the employer. Brumfield v. Sanders, 232 F.3d 276, 380 (3d Cir. 2000); Robus v. Pa. Dep't of Corr., 2006 WL 2060615, at *8 (E.D. Pa. 2006). A Commonwealth employee is acting within the scope of his employment even if he or she undertakes debatable acts or acts contrary to policy, or acts that are forbidden or done in a forbidden manner, or acts done with personal animosity, provided that the act is motivated at

least in part by a desire to serve the employer's interests. Aliota v. Graham, 984 F.2d 1350, 1358 (3d Cir. 1993); Mitchell v. Luckenbill, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010); Kull v. Guise, 81 A.3d 148, 158–59 (Pa. Cmwlth. 2013). Where the use of force is unprovoked, unnecessary, and unjustified by security concerns or penological goals, such conduct does not, as a matter of law, fall within the scope of employment. Gray v. Wakefield, 2014 WL 2526619, at *4 (M.D. Pa. 2014); Wesley v. Hollis, 2007 WL 1655483, at *15 (E.D. Pa. 2007); Robus v. Dep't of Corr., 2006 WL 2060615, at *9 (E.D. Pa. 2006).

Cases applying the scope of employment in the prison context provide instruction on the contours of the doctrine. In Robus v. Department of Corrections, the corrections officers/defendants allegedly beat the plaintiff and placed him, without justification, in the restricted housing unit. Of the four co-defendants, the Court dismissed state law claims as to three of them. The distinguishing factor among them was whether the corrections defendants had a personal motive for their actions. The one defendant for whom the motion to dismiss was not granted was alleged to have acted in retaliation against the plaintiff for having filed a lawsuit against his wife, who was also an employee of the prison. This defendant was alleged to have told plaintiff, "[w]ho the f— are you to sue my wife," and "you better knock off all your lawsuit bullshit." Robus, 2006 WL 2060615, at *8. As for the other three co-defendants, "nothing in the record suggest[ed] that [they] had a personal motive for their actions." Id. at *9. Because their actions were motivated, at least in part and perhaps in whole, by a desire to serve the employer, they were acting within the scope of their employment when they used force against the plaintiff. Id. Further, the use of force against plaintiff did not make their actions outside the scope of employment. While the use of force may have been "reprehensible," it was not "entirely

unexpectable." Id. The use of force, "while barbaric, do[es] not represent such a great departure from the roughhewn reality of a corrections officer's daily routine as to fall outside the scope of . . . employment." Id. (*quoting* Pizzuto v. County of Nassau, 239 F. Supp. 2d 301, 315 (E.D.N.Y. 2003).

Personal motivation against a plaintiff was the linchpin for the decision in Savage v. Judge as well. 2007 WL 29283 (E.D. Pa. 2007). There, in reviewing the scope of employment issue on a motion to dismiss, the Court found that the corrections defendant was not acting within the scope of his employment as an SCI-Graterford corrections officer. The plaintiff alleged that corrections officers assaulted him in retaliation for his agreement to testify on behalf of another inmate and against the corrections defendants. Additionally, although the Department of Corrections might expect that defendant would use force during the course of his employment, it would not necessarily expect the use of excessive force divorced from any need of the officer to exert control over the prisoner. Because the plaintiff alleged a personal motivation against plaintiff, and it had not been established that defendant's motive was in part a desire to serve the employer, the plaintiff had properly pleaded that defendants were acting outside the scope of their employment. Id. at *5; see also R.A. ex rel. N.A. v. First Church of Christ, 748 A.2d 692, 700 (Pa. Super. 2000) (holding that an assault committed by an employee upon another for personal reasons is not actuated by an intent to perform the business of the employer and, as such, is not within the scope of employment).

Finally, in Gray v. Wakefield, corrections defendants were operating within the scope of their employment where the force used had a legitimate penological goal. In that case, corrections defendants were attempting to gain control of the plaintiff after he had spewed fecal matter on the members of the Program Review Committee. Specifically, the force used on

plaintiff included striking him in the neck and shoulder area, pulling him face down onto the floor, and holding him there as plaintiff struggled against their hold. 2013 WL 5491560, at *3. At the time the defendants were on duty, in uniform, and responding to the plaintiff's actions. Wakefield, 2014 WL 2526619, at *4 (M.D. Pa. 2014). The defendants' actions were "of a kind and nature corrections officers are employed to perform." Id.

The holdings of these cases are directly applicable to the case *sub judice*. The undisputed record shows that Defendant Hollowood had no personal motivation to act against Mr. Allen. Mr. Allen testified that he did not know Mr. Hollowood before the incident on February 25, 2019:

> MR. COLALELLA:  As to Mr. Hollowood, you are aware -- you did not know him before this incident; is that correct?
> MR. ALLEN: I heard of him. I don't know him.
> MR. COLALELLA:  My question is --
> MR. ALLEN: We don't know each other. He's a CO. We don't know each other.
> MR. COLALELLA:  Did you have any personal interactions with him prior to the search?
> MR. ALLEN:  Not that I can recall.

R. Vol. I, at 104:18–105:1. Defendant Hollowood testified to the same facts:

> MS. CHAVEZ-FREED:  So on February 25, 2019, you find yourself in the cell, and you are searching, and Michael Allen arrives at the cell, right?
> MR. HOLLOWOOD:  Correct.
> MS. CHAVEZ-FREED:  And what is it that you hear?
> MR. HOLLOWOOD:  First, he comes and says, "What the fuck are you doing in my cell? You guys are always after me."
> Don't know what that meant, because I never met the guy a day in my life. Never had an interaction with him prior. Didn't know anything about him.

R. Vol. II, at 127:20–128:4. Rather than a personal vendetta against Plaintiff, Defendant Hollowood was acting in services of his employer by conducting a cell search for contraband that resulted in a use of force. Again, from the record:

> MS. CHAVEZ-FREED: And on February 25, 2019, you went into Michael Allen's cell, right?
> MR. HOLLOWOOD: Correct.
> MS. CHAVEZ-FREED: And you went in there to search?
> MR. HOLLOWOOD: Yes, ma'am.

R. Vol. II, at 126:15–19. Corrections Defendants proved by a preponderance of the evidence that Defendant Hollowood's conduct was not motivated by personal animus against Plaintiff. The use of force would have been expectable by Defendant's employer, and does not represent "such a great departure from the roughhewn reality" of a correction's officer job as to fall outside of the scope of employment. Robus, 2006 WL 2060615, at *9. Further, the undisputed record makes clear that Defendant Hollowood was at all times employed by the Department of Corrections and the incident involving Plaintiff occurred on the job:

> MR. COLALELLA: At all times during this interaction, you were working a shift; is that correct?
> MR. HOLLOWOOD: I was working –
> MR. COLALELLA: You were working a shift?
> MR. HOLLOWOOD: 2:00 to 10:00 shift.
> MR. COLALELLA: Yes.
> MR. HOLLOWOOD: I was working from 14:00 to 22:00, which is 2:00 to 10:00.
> MR. COLALELLA: Obviously you were a DOC employee, correct?
> MR. HOLLOWOOD: Correct.
> MR. COLALELLA: Did you have any personal vendetta that you trying to accomplish with regard to this search?
> MR. HOLLOWOOD: No.
> MR. COLALELLA: Was all of this just part of our job?
> MR. HOLLOWOOD: Yes

R. Vol. II, at 180:7–21. No evidence was presented showing that Defendant Hollowood was motivated by anything other than the penological goal of securing Plaintiff. The facts of record, taken alongside the governing case law, necessitate a directed verdict in favor of Corrections Defendant Hollowood indicating that he was acting within the scope of his employment.

2. **Plaintiff Failed to Present Sufficient Evidence as to the Claim of Intentional Infliction of Emotional Distress (IIED) to Satisfy the Medical Requirement of IIED.**

To state a plausible claim for intentional infliction of emotional distress, a plaintiff must prove sufficient facts demonstrating that (1) the defendant's conduct was extreme and outrageous; (2) the defendant's conduct caused the plaintiff's severe emotional distress; and that (3) the defendant acted intentionally to cause that person such distress or with knowledge that such distress was substantially certain to occur. Ghrist v. CBS Broad., Inc., 40 Supp. 3d 623, 630 (W.D. Pa. 2014) (*citing* Brown v. Muhlenberg Twp., 269 F.3d 205, 217 (3d Cir. 2001)). It is not enough that the defendant acted with intention which is tortious or even criminal, or that he intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle a plaintiff to punitive damages for another tort. Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998). Rather, "outrageous or extreme conduct" has been defined by the appellate courts of this Commonwealth as conduct that is "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa. Super. 2005).

Furthermore, a plaintiff must demonstrate physical injury or harm to sustain a cause of action for intentional infliction of emotional distress. Kazatsky v. King David Mem'l Park, Inc., 527 A.2d 988, 995 (Pa. 1987). In Karatsky, the Pennsylvania Supreme Court stated that "[g]iven the advanced state of medical science, it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's 'outrageousness' without expert medical confirmation that the plaintiff actually suffered the claimed distress." Id. Plaintiffs who are "truly

damaged should have little difficulty in procuring reliable testimony as to the nature and extent of their injuries." Id.

At the very least, existence of the alleged emotional distress must be supported by competent medical evidence. Id. Pennsylvania courts require that recovery for IIED is impossible without expert medical confirmation that the plaintiff actually suffered the claimed distress. Id.; see also Landau v. Lamas, 2019 WL 3521421, at *19 (M.D. Pa. 2019). This is a requirement even in cases where a plaintiff claims that his emotional distress has been caused by a physical impact. Gray v. Huntzinger, 147 A.3d 924, 928–30 & n.4 (Pa. Super. 2016) (holding that IIED claims be supported by expert testimony). Expert evidence is required to establish severe emotional distress to support an IIED claim. See, e.g., Kazatsky, 527 A.2d at 995; Gray, 147 A.3d at 928; Cassell v. Lancaster Mennonite Conference, 834 A.2d 1185, 1189 n.3 (Pa. Super. 2003) ("Expert medical testimony is necessary to establish that a plaintiff actually suffered the claimed emotional distress."); Shiner v. Moriarty, 706 A.2d 1228, 1239 (Pa. Super. 1998) ("Expert medical testimony is required to establish a claim for intentional infliction of emotional distress."). See also Landau, 2019 WL 3521421, at *19. Controlling precedent unequivocally requires expert testimony as a precondition for recovery for IIED. Gray v. Huntzinger, 147 A.3d 924 (Pa. Super. 2016).

There was no competent medical evidence presented at trial as to IIED. The only information presented was Plaintiff's own subjective testimony as to his injuries. Expert testimony is required as a precondition for recovery. Plaintiff's prevailing on his IIED claim is without sufficient evidence in the record, and judgment as a matter of law should be entered in favor of Corrections Defendants as to this issue.

B. **Motion for New Trial/Remittitur Pursuant to Rule 59**

If this Court does not enter judgment in favor of the Corrections Defendants under Rule 50, it should, in the alternative, grant a new trial limited to the issues presented below.

Federal Rule of Civil Procedure 59 governs motions for a new trial. The Rule provides, in relevant part, "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1). The Court may grant a new trial where it "believes the jury's decision is against the weight of the evidence." Klein v. Hollings, 992 F.2d 1285, 1289–90 (3d Cir. 1993). However, a Court "should do so only when 'the great weight of the evidence cuts against the verdict and . . . [ ] a miscarriage of justice would result if the verdict were to stand.'" Leonard v. Stemtech Int'l Inc., 834 F.3d 376, 386 (3d Cir. 2016) (*quoting* Springer v. Henry, 435 F.3d 268, 274 (3d Cir. 2006)). "A district court's power to grant a new trial is limited to ensure that it does not substitute its judgment of the facts and the credibility of the witnesses for that of the jury." Id.

The applicable standard for ordering a new trial where the verdict was against the weight of the evidence differs from the standard for granting a motion for judgment as a matter of law. Agere Sys., Inc. v. Atmel Corp., 2005 WL 2994702, at *15 (E.D. Pa. 2005). A court should only order a new trial when, in its opinion, the verdict is contrary to the great weight of the evidence. Id. In determining whether a new trial should be granted, a court is permitted to consider the credibility of the evidence and to weigh the evidence. Although "a party who fails to move for judgment as a matter of law under Rule 50(a) at the close of all evidence wholly waives the right to mount any post-trial attack on sufficiency of evidence grounds . . . [w]here a challenge is made to the weight of the evidence, as opposed to its sufficiency, a court may exercise its

discretion and grant a new trial regardless." Id. at *16 (*citing* Greenleaf v. Garlock, 174 F.3d 352, 365 (3d Cir. 1999)).

### 1. The Great Weight of the Evidence Presented at Trial is Contrary to the Jury's Finding that Defendant Hollowood Acted Outside the Scope of his Employment.

Corrections Defendants seek relief in the form of a new trial as to the issue of whether Defendant Hollowood was acting within the scope of his employment. The jury's verdict was contrary to the "great weight of the evidence" adduced at trial. Roebuck v. Drexel Univ., 852 F.2d 715, 736 (3d Cir. 1988). The elements to be proven are the same as those elucidated in Section I.A.1. Here, however, the court is permitted to consider the credibility of the witnesses and to weigh the evidence. Agere Sys., Inc. v. Atmel Corp., 2005 WL 2994702, at *15 (E.D. Pa. 2005).

The evidence at trial showed that Corrections Defendant Hollowood's conduct was of the kind that he was employed to perform, occurred within the job's authorized time and space limits, and was motivated by a desire to serve the Department of Corrections. Defendant Hollowood was working a shift on February 25, 2019. He was working at the State Correctional Facility at Fayette. The altercation with Plaintiff occurred during a search of Plaintiff's cell based on a tip that Plaintiff was in possession of contraband. R. Vol. II, at 34–36, 125–27. As Hollowood testified and as the video demonstrated, Hollowood's use of physical force was a reaction to Plaintiff's conduct, and was motivated by the penological goal of securing Plaintiff. R. Vol. II, at 170. The jury's verdict to the contrary is against the great weight of the evidence, as the record is bereft of any evidence showing that the motivation for Hollowood's conduct was divorced from penological goals. Plaintiff presented no competent evidence showing that Hollowood acted out of personal motivation or animus towards Plaintiff. See Section I.A.1., *supra*, reproducing relevant testimony as to Defendant Hollowood's lack of personal motivation.

The jury found that Defendant Hollowood's use of force was neither "excessive" nor "malicious," in that it both refused to find liability for excessive force as well as punitive damages. [ECF 205]. The force, not being "excessive," was therefore of the type that would be expectable by the Department of Corrections in the course of Defendant's employment. For these reasons, new trial should be granted as to the issue of scope of employment.

> **2. The Great Weight of the Evidence Presented at Trial is Against the Jury's Finding that Defendant Hollowood Acted in an "Outrageous" Manner Where the Record Contains No Competent Medical Evidence of Injury.**

Corrections Defendants seek relief in the form of a new trial on the grounds that the great weight of the evidence is against the jury's finding of intentional infliction of emotional distress (IIED). The elements of IIED are laid out in Section I.A.2. For purposes of a Rule 59 Motion for New Trial on the grounds that a verdict is against the weight of the evidence, the Court is permitted to consider the credibility of witnesses and weigh the evidence. Agere, 2005 WL 2994702, at *15.

In finding Corrections Defendant Hollowood liable for IIED, the jury concluded that this Defendant's conduct was "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa. Super. 2005). The weight of the evidence presented at trial fails to support this conclusion. The fact that there was no competent medical evidence of injuries necessitates a finding that the jury's verdict was against the weight of the evidence. Injury is an element to be proven. Kazatsky v. King David Mem'l Park, Inc., 527 A.2d 988, 998 (Pa. 1987). Recovery cannot be predicated on an inference based on the defendant's "outrageousness" without expert medical confirmation that the plaintiff actually suffered the claimed distress. Id. Plaintiff prevailed at trial despite having presented no evidence other than

his own subjective distress. No competent medical evidence showing injury took place during the trial. The jury's finding of "outrageousness" is therefore wholly unsupported by the great weight of evidence adduced at trial.

Further, the jury's verdict is internally self-contradictory. The jury found that the Defendant's use of force was both not "excessive" and not "malicious." Where "malice" or a degree of aggravation that would entitle a plaintiff to punitive damages are not enough to establish IIED, Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998), there can be no recovery for the level of "outrageousness" IIED requires.

A new trial should be granted as to liability for the IIED claim, or, in the alternative, a new trial for damages should be granted.

### 3. This Court Should Order Remittitur of the Damages as the Jury's Excessive Award is Unsupported by the Record.

If this Court does not award a new trial, it should alternatively give the plaintiff the option of a remittitur. Corrections Defendants request that Court alter the jury's award of compensatory damages. A motion under Rule 59 is the appropriate means to challenge the size of a verdict. See Taha v. Bucks Cnty. Pa., 408 F. Supp. 3d 628 (E.D. Pa. 2019) ("Under Rule 59(e), a party may seek alteration or amendment of the verdict."). The Third Circuit has explained that courts reduce damages awards in one of two circumstances, referred to as "remittitur": when a court reduces an award as excessive or legally unsupported to satisfy constitutional due process concerns, and when it considers an award unreasonable on the facts of the case at hand. Id. (*citing* Cortez v. Trans Union, LLC, 617 F.3d 688, 715–16 (3d Cir. 2010); Spence v. Bd. of Educ. of Christina Sch. Dist., 806 F.2d 1198, 1201 (3d Cir. 1986)). "There must be a rational relationship between the specific injury sustained and the amount awarded." Gumbs v. Pueblo Int'l, Inc., 823 F.2d 768, 773 (3d Cir. 1987). "While a district court

has discretion in determining whether a jury's verdict is excessive, it is undisputed that the court may not vacate or reduce the award merely because it would have granted a lesser amount of damages." Motter v. Everest & Jennings, Inc., 883 F.2d 1223, 1230 (3d Cir. 1989).

The Court of Appeals for the Third Circuit has consistently recognized that where there is no rational basis in the record for the jury's award, the trial court may reduce or vacate the award as excessive. Virgin Island Mar. Serv., Inc. v. Puerto Rico Mar. Shipping Auth., 978 F. Supp. 637, 648 (D.V.I. 1997), *aff'd sub nom.* Virgin Islands Mar. Serv., Inc. v. Puerto Rico Mar. Shipping Auth., 162 F.3d 1153 (3d Cir. 1998). Compensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct. Cortez v. Trans Union, LLC, 617 F.3d 688, 718 (3d Cir. 2010); Jacobs v. Pa. Dep't of Corr., 2011 WL 2295095, at *15 (W.D. Pa. 2011). The Court's instruction to the jury as to compensatory damages is illuminative:

> If you do find the defendant or defendants liable, then you must consider the issue of compensatory damages. You must award Michael Allen an amount that will fairly compensate him for any injury that he actually sustained as a result of the defendant, either the individual defendant or defendants' conduct.
>
> Michael Allen must show that the injury would not have occurred without the defendants' act. Michael Allen must also show that the individual defendant or the collective defendants' acts played a substantial part in bringing about the injury and that the injury was either a direct result or a reasonably probable consequence of the defendant or defendants' acts.
>
> Compensatory damages must not be based on speculation or sympathy. They must be based on the evidence presented at trial and only on that evidence. The plaintiff has the burden of proving compensatory damages by a preponderance of the evidence.

R. Vol. III, at 60–61.

The jury's award of $250,000 compensatory damages as to the battery count and $250,000 as to the IIED count bears no rational relationship to the injury sustained, nor to the trial record. The fact that no medical evidence was presented makes this jury award excessive. This is particularly true as it relates to the IIED claim, where the "outrageousness" of the conduct is wholly detached from competent medical evidence of emotional distress. The only evidence as to damages was Plaintiff's subjective testimony. Remittitur is appropriate in this case as the jury award is so excessive in relation to the evidence presented at trial.

## II.     CONCLUSION

WHEREFORE, it is respectfully requested that Defendants' Motion for Judgment as a Matter of Law pursuant to Rule 50 be granted, and that a verdict in favor of Defendants be granted as to the scope of employment claim and/or the intentional infliction of emotional distress claim; or, in the alternative, Defendant's Motion to Amend or Alter Judgment and Motion for a New Trial pursuant to Rule 59 be granted, and that the award of damages be reduced and/or that a new trial be granted.

**Respectfully submitted,**

**MICHELLE A. HENRY**
**Attorney General**

**By:** **/s/ *Michael P. Gaetani***
**Senior Deputy Attorney General**
**Attorney ID 209407**
**Office of Attorney General**
**1251 Waterfront Place**
**Mezzanine Level**
**Pittsburgh, PA 15222**
**Phone: (412) 565-7680**
**mgaetani@attorneygeneral.gov**

**/s/ *Jorden P. Colalella***
**Deputy Attorney General**
**Attorney ID 316706**
**Office of Attorney General**
**1251 Waterfront Place**
**Mezzanine Level**
**Pittsburgh, PA 15222**
**Phone: (412) 565-5155**
**jcolalella@attorneygeneral.gov**

**Date: November 30, 2023**                              **Counsel for Defendants**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL ALLEN, | : |
| | : Civil Action No. 19-1258 |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| SECRETARY JOHN WETZEL, et al., | : |
| | : |
| Defendants. | : |

## CERTIFICATE OF SERVICE

I, Michael P. Gaetani, Senior Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on **November 30, 2023**, I caused to be served a true and correct copy of the foregoing document titled **Brief in Support of Defendants' Motion for Judgment as a Matter of Law Pursuant to Rule 50(b) and Alternative Relief for New Trial Under Rule 59** to the following:

**VIA ECF:**
Leticia Chavez-Freed
The Chavez-Freed Law Office
2600 N. 3rd Street
2nd Floor
Harrisburg, PA 17110
717-893-5698
Fax: 717-893-5873
Email: leticia@chavez-freedlaw.com

                                              */s/ Michael P. Gaetani*
                                              **MICHAEL P. GAETANI**
                                              Senior Deputy Attorney General

                                              */s/ Jorden P. Colalella*
                                              **JORDEN P. COLALELLA**
                                              Deputy Attorney General