**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MICHAEL SHERMAN ALLEN,      )
                                  )
           Plaintiff,        )    2:19-cv-01258-RJC
                                  )
    vs.                    )
                                  )    Judge Robert J. Colville
CO ROBERT HOLLOWOOD; SGT.    )
CHRISTOPHER SHELDON; and CO JUAN    )
MACIAS,                       )
                                  )
          Defendants.    )

**<u>MEMORANDUM ORDER OF COURT</u>**

Robert J. Colville, United States District Judge

      Before the Court is a Motion for Judgment as a Matter of Law Pursuant to Rule 50(b) and Alternative Relief for New Trial Under Rule 59 (ECF No. 214) (the "Motion"), which seeks relief on behalf of Defendant Robert Hollowood, who the jury found liable under Pennsylvania law for the torts of battery and intentional infliction of emotional distress during the October 30, 2023 - November 1, 2023 jury trial in this matter. The jury awarded Plaintiff $250,000.00 on each of these two claims, *see* ECF No. 205, and the Court subsequently entered judgment in Plaintiff's favor and against Hollowood in a total amount of $500,000.00 on November 2, 2023, *see* ECF No. 206. Hollowood filed a Brief in Support (ECF No. 215) of his Motion on November 29, 2023. Plaintiff filed a Response (ECF No. 216) to the Motion December 10, 2023. The deadline for the filing of a reply has passed, and the Court thus considers the Motion to be fully briefed at this time.

1

I.      **Background**

As noted, a jury trial was held in this matter from October 30, 2023 through November 1, 2023.  Following deliberations, the jury returned a verdict finding, in pertinent part,[1] that: (1) Hollowood did not use excessive force against Plaintiff on February 25, 2019 in violation of Plaintiff's rights under the Eighth Amendment; (2) Hollowood did not violate Plaintiff's Fourteenth Amendment equal protection rights on February 25, 2019; (3) Hollowood was not acting within the scope of his employment at the time of the incident on February 25, 2019 as it concerns Plaintiff's claims of battery and  intentional infliction of emotional distress; (4) Plaintiff established that Hollowood committed the tort of battery against Plaintiff on February 25, 2019; (5) Hollowood's actions on February 25, 2019 caused actual injury to Plaintiff; (6) as it relates to questions 12 and 13 respecting battery, $250,000.00 will fairly compensate Plaintiff for any physical injury or  emotional pain and mental anguish that he sustained as a result of the Hollowood's conduct on February 25, 2019; (7) Plaintiff established that Hollowood committed the tort of intentional infliction of emotional distress against Plaintiff on February 25, 2019; (8) Hollowood's actions on February 25, 2019 caused injury to Plaintiff; (9) as it relates to questions 17 and 18 respecting intentional infliction of emotional distress, $250,000.00 will fairly compensate Plaintiff for any physical injury or emotional pain and mental anguish that he sustained as a result of the Hollowood's conduct on  February 25, 2019; and (10) with respect to both tort claims, Hollowood did not act maliciously or wantonly in violating Plaintiff's rights as provided under Pennsylvania law.  *See* ECF No. 205.

---

[1] The Court notes that, at points, the Motion seemingly requests relief on behalf of each of the Defendants, and not only Hollowood.  Because Defendants Sheldon and Macias were found to be acting within the scope of their employment on the day in question, they are entitled to sovereign immunity on Plaintiff's state law claims.  No Defendant was found liable on Plaintiff's Section 1983 claims.  Accordingly, the Court construes the Motion as being brought only by Hollowood, as the jury's verdict was favorable to Defendants Sheldon and Macias.

II.    **Legal Standards**

A.  **Rule 50**

With respect to motions for judgment as a matter of law, Federal Rule of Civil Procedure

50 provides:

> **(a) Judgment as a Matter of Law.**
>
> > **(1) *In General.*** If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> >
> > > **(A)** resolve the issue against the party; and
> > >
> > > **(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
> >
> > **(2) *Motion.*** A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.
>
> **(b) Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
> > **(1)** allow judgment on the verdict, if the jury returned a verdict;
> >
> > **(2)** order a new trial; or
> >
> > **(3)** direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50. "[A] judgment notwithstanding the verdict may be granted under Fed. R. Civ.

P. 50(b) only if, as a matter of law, the record is critically deficient of that minimum quantity of

evidence from which a jury might reasonably afford relief." *In re Lemington Home for the Aged*,

777 F.3d 620, 626 (3d Cir. 2015) (quoting *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 249 (3d Cir. 2001). In resolving such a motion, "all evidence and inferences most favorable to the party against whom the motion is made must be indulged." *Mihalchak v. Am. Dredging Co.*, 266 F.2d 875, 878 (3d Cir. 1959). "When evaluating 'whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version.'" *Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 218 (3d Cir. 2021) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)).

**B. Rule 59**

With respect to grounds for a new trial, Federal Rule of Civil Procedure 59 provides that a "court may, on motion, grant a new trial on all or some of the issues--and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1)(A). The Third Circuit has explained:

> While a court may grant a new trial under Rule 59 "for any reason for which a new trial has heretofore been granted in an action at law in federal court," Fed. R. Civ. P. 59(a)(1)(A), it should do so only when "the great weight of the evidence cuts against the verdict and . . . [ ] a miscarriage of justice would result if the verdict were to stand," *Springer v. Henry*, 435 F.3d 268, 274 (3d Cir. 2006) (internal quotation marks omitted); *see Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352–53 (3d Cir. 1991) (new trial should be granted only where the verdict "cries out to be overturned" or "shocks [the] conscience"). A district court's power to grant a new trial is limited "to ensure that [it] does not substitute its judgment of the facts and the credibility of the witnesses for that of the jury." *Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 201 (3d Cir. 1996) (internal quotation marks omitted). Our power is similarly limited and we review the grant or denial of a motion for a new trial for abuse of discretion. *Olefins Trading, Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282, 289 (3d Cir. 1993).

*Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386 (3d Cir. 2016).

With respect to Rule 59 motions, the United States District Court for the Eastern District of Pennsylvania has explained:

> While the Rule is not precise in its language as to the grounds for a new trial, case law has established that a court has the clear authority to order a new trial where, among other things, the verdict was against the weight of the evidence, where the size of the verdict was too large or too small, where new evidence has been discovered, where the judge or any attorney has engaged in misconduct, and where a prejudicial error of law was made.

*Agere Sys., Inc. v. Atmel Corp.*, No. CIV.A. 02-CV-864, 2005 WL 2994702, at *15 (E.D. Pa. Aug. 17, 2005).  While the standard for granting a new trial is less stringent than the standard for granting judgment as a matter of law:

> As the Third Circuit has said, "new trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience."  In so determining, a court is permitted to consider the credibility of witnesses and to weigh the evidence.  A court may not, however, grant a new trial merely because it would have reached a different verdict than the jury.

*Agere Sys., Inc. v. Atmel Corp.*, No. CIV.A. 02-CV-864, 2005 WL 2994702, at *15 (E.D. Pa. Aug. 17, 2005).

## III.    Discussion

In moving for judgment as a matter of law pursuant to Rule 50, Hollowood argues that he met his burden of establishing, by a preponderance of the evidence, that he was acting within the scope of his employment on the date in question, and that he is thus immune from liability with respect to Plaintiff's tort claims.  Mot. 1, ECF No. 214.  Hollowood argues in the alternative that Plaintiff failed to present sufficient evidence of intentional infliction of emotional distress to satisfy the medical requirement of such a claim.  *Id*.  In moving for a new trial under Rule 59, Hollowood requests a new trial as to the issue of scope of employment pertaining to Hollowood, as, in Hollowood's estimation, "the great weight of the evidence presented at trial is contrary to the jury's finding that Defendant Hollowood acted outside the scope of his employment[.]"  *Id.* at 2. Hollowood further requests a new trial as to the issue of intentional infliction of emotional distress

because, again in Hollowood's estimation, "the verdict was against the great weight of the evidence[.]" *Id*. Finally, Hollowood moves to have the judgment altered or amended, i.e. reduced, in the form of remittitur. *Id*. Plaintiff opposes the Motion in its entirety.

**A. Rule 50 Motion**

**1. Scope of Employment**

"Under Pennsylvania law, battery is defined as an intentional harmful or offensive contact with the person of another." *Martin-McFarlane v. City of Philadelphia*, 299 F. Supp. 3d 658, 670 (E.D. Pa. 2017). Both battery and intentional infliction of emotional distress are intentional torts. "In general, employees of the Commonwealth of Pennsylvania acting within the scope of their duties enjoy sovereign immunity" with respect to intentional torts. *Jackson v. O'Brien*, No. 1:18-CV-32, 2020 WL 5702418, at *6 (W.D. Pa. Sept. 24, 2020) (citing *Walton v. Harkleroad*, 2016 WL 11480713, at *7 (W.D. Pa. Mar. 3, 2016)). Under Pennsylvania law:

> Conduct of [an employee] is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the [employer], and (d) if force is intentionally used by the [employee] against another, the use of force is not unexpectable by the [employer].

*Fought v. City of Wilkes-Barre, Pennsylvania*, 466 F. Supp. 3d 477, 521 (M.D. Pa. 2020) (quoting Restatement (Second) of Agency § 228(1) (1958)). An employee can be found to be acting within the scope of their employment even where the employee acts intentionally or criminally. *Tibbens v. Snyder*, No. 1:18-CV-02112, 2020 WL 5372097, at *5 (M.D. Pa. June 24, 2020), *report and recommendation adopted*, No. 1:18-CV-2112, 2020 WL 5370024 (M.D. Pa. Sept. 8, 2020).

Conduct falls outside the scope of employment if the conduct is done in an outrageous manner. *Abney v. Younker*, No. 1:13-CV-1418, 2019 WL 7812383, at *9 (M.D. Pa. Oct. 3, 2019), *report and recommendation adopted*, No. 1:13-CV-01418, 2020 WL 488894 (M.D. Pa. Jan. 30,

2020).  Courts in the Third Circuit have held that "a correctional officer is not acting within the scope of his or her employment, and thus not entitled to the protection of sovereign immunity, when they assault an inmate without justification."  *Id.* (collecting cases*); see also Gray v. Wakefield*, No. 3:CV-09-0979, 2014 WL 2526619, at *4 (M.D. Pa. June 4, 2014) (explaining that, where the use of force by corrections officers is unprovoked, unnecessary, and unjustified by security concerns or penological goals, it does not, as a matter of law, fall within the scope of employment); *Robus v. Pennsylvania Dep't of Corr.*, No. CIV A. 04-2175, 2006 WL 2060615, at *8 (E.D. Pa. July 20, 2006) ("[I]n Pennsylvania, 'an assault committed by an employee upon another for personal reasons . . . is not actuated by an intent to perform the business of the employer and, as such, is not within the scope of employment.'" (quoting *R.A. ex rel. N.A. v. First Church of Christ*, 748 A.2d 692, 700 (Pa. Super. 2000))); *but see id.* at * 9 ("As for the final requirement, if Robus's allegations are true, the force used by Hardnett and Humphrey and ordered by DiGuglielmo was reprehensible, but not entirely unexpectable.  As one court observed in a case involving guards who severely beat an inmate, '[s]uch acts, while barbaric, do not represent such a great departure from the roughhewn reality of a correction officer's daily routine as to fall outside of the scope of . . . employment.'" (quoting *Pizzuto v. County of Nassau*, 239 F.Supp.2d 301, 315 (E.D.N.Y. 2003))).

In moving for judgment as a matter of law, Hollowood relies heavily on argument that no evidence was introduced of a preexisting negative (or any) relationship between Hollowood and Plaintiff, and that, accordingly, the evidence indicates that Hollowood had no personal motivation to act against Plaintiff.  Hollowood further asserts that the evidence of record indicates that he was working a shift on the day in question, that he was executing a cell search for contraband based upon a tip that escalated to involve a use of force, and that his actions were motivated by the

penological goal of securing Plaintiff during the search and not personal animosity.  Br. in Supp. 2-6, ECF No. 215.  Plaintiff argues that sufficient evidence was introduced to support a finding that Hollowood's use of escalating force was motivated by Plaintiff's race and by perceived disrespect exhibited by Plaintiff to Hollowood, and that the same could support a finding that Hollowood's actions on the day in question were motivated by personal, and not penological, reasons.  Br. in Opp'n 4, ECF No. 216.

Initially, sovereign immunity is an affirmative defense, and Hollowood thus bore the burden of proof at trial of establishing that he was acting within the scope of employment during the incident at issue.  *Mucy v. Nagy*, No. CV 20-1950, 2023 WL 1108390, at *14 (W.D. Pa. Jan. 30, 2023 ("Because sovereign immunity is an affirmative defense, a defendant bears the burden of proof on this issue.").  Further, the Court must construe all evidence and inferences in a light most favorable to Plaintiff, the prevailing party, in resolving a Rule 50 Motion, and the Court cannot not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version.  The Court finds that Hollowood comes up well short of his burden under Rule 50 with respect to sovereign immunity in light of the testimony introduced during trial and his high burden under Rule 50.

The evidence of record indicates that, on the day in question, Hollowood was engaged in a fruitless search for contraband based upon a confidential informant's tip.  Plaintiff testified that, in Hollowood's first address to Plaintiff, Hollowood referred to Plaintiff with a racial slur, and further implied that Hollowood was entitled to engage in a search of Plaintiff's cell because Hollowood was "an American."  It is notable to the Court that all witnesses corroborated Hollowood's use of a "this is America" or "I'm an American" statement, as the jury would clearly be warranted in finding that this statement reflected "Hollowood's flawed image of his own self-

importance, and his flawed image of Plaintiff's unimportance."  Br. in Opp'n 12, ECF No. 216.

While Hollowood testified that he observed Plaintiff pulling out a plastic spoon, which Hollowood

perceived to be a possible weapon, when he initiated the use of force against Plaintiff, Plaintiff

testified that the only item in his pocket was a cigarette.  The video introduced during trial did not

display Plaintiff removing an object from his pocket, and no such object was produced by

Hollowood during trial.  The jury could have reasonably concluded that no such item existed, and

that Hollowood invented a story respecting such an item to justify his assault of Plaintiff due to

Plaintiff's race or his challenge of the nature and necessity of Hollowood's search.

Video introduced during trial showed that, during the altercation between Hollowood and

Plaintiff, Hollowood placed his forearm against Plaintiff's throat and stood on the railing outside

of Plaintiff's cell in an effort to gain leverage and increase pressure on Plaintiff's throat.  Plaintiff

testified that, as Hollowood took Plaintiff to the ground and continued to restrain Plaintiff,

Hollowood put his knees into Plaintiff's head and pulled down on Plaintiff's neck in a manner that

made Plaintiff feel as though Hollowood was trying to break Plaintiff's neck.  Plaintiff testified

that, while he was being restrained, Hollowood continued to use slurs, falsely stated that Plaintiff

had assaulted him in an effort to increase the force used against Plaintiff by other officers, and also

instructed one officer to break each of Plaintiff's fingers one by one while again referring to

Plaintiff using a slur.

All of these facts, and in particular the repeated use of a racial slurs, false report of an

assault, and Hollowood's instruction that other corrections officers should break each of Plaintiff's

fingers one by one, completely contradict Hollowood's assertion that he held no personal animus

towards Plaintiff, whether or not they had a preexisting relationship.  The jury was, in this Court's

estimation, entirely warranted in finding that the force utilized by Hollowood was exercised based

upon personal reasons, that is, based upon Hollowood's feelings about Plaintiff due to Plaintiff's race or perceived disrespect. The jury was thus warranted in finding that Hollowood did not meet his burden of establishing that he acted within the scope of his employment on the day in question. Hollowood comes up well short of his burden under Rule 50 with respect to the issue of scope of employment, and his Rule 50 Motion on this issue is denied.

### 2. Intentional Infliction of Emotional Distress

With respect to Plaintiff's claim for intentional infliction of emotional distress, Hollowood argues that Plaintiff failed to present sufficient evidence to satisfy the medical requirement for such a claim. To succeed on a claim for intentional infliction of emotional distress, a plaintiff must establish that: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant's conduct caused the plaintiff severe emotional distress; and that (3) the defendant acted intending to cause that person such distress or with knowledge that such distress was substantially certain to occur." *Ghrist v. CBS Broad., Inc.*, 40 F. Supp. 3d 623, 630 (W.D. Pa. 2014).

"In addition, a plaintiff must allege that he or she 'suffer[ed] some type of resulting physical harm due to the defendant's outrageous conduct,' which must be *supported by competent medical evidence*." *Ghrist*, 40 F. Supp. 3d at 630 (quoting *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010) (emphasis added); *see also Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987) ("It is basic to tort law that an injury is an element to be proven. Given the advanced state of medical science, it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's 'outrageousness' *without expert medical confirmation* that the plaintiff actually suffered the claimed distress. Moreover, the requirement of some objective proof of severe emotional distress will not present an unsurmountable obstacle to recovery. Those truly damaged should have little difficulty in procuring reliable testimony as to the nature and extent of

their injuries." (emphasis added)); *Gray v. Huntzinger*, 147 A.3d 924, 930 n.4 (2016). ("Thus, it is apparent that, regardless of the presence of physical impact, *Kazatsky unequivocally requires expert medical testimony as a precondition to recovery for IIED*." (emphasis added)); *Bolden v. Se. Pennsylvania Transp. Auth.*, 21 F.3d 29, 35 (3d Cir. 1994) ("Under Pennsylvania law, expert medical evidence *must* be presented before a plaintiff can recover for intentional infliction of emotional distress." (emphasis added)).

Hollowood asserts that, because Plaintiff did not introduce expert medical testimony during the trial in this matter, judgment as a matter of law should be granted in Hollowood's favor on Plaintiff's IIED claim because Plaintiff introduced no evidence on which the jury could conclude that Plaintiff suffered an injury with respect to his intentional infliction of emotional distress claim. Br. in Supp. 8, ECF No. 215. Hollowood argues that the only evidence as to damages introduced at trial consisted of Plaintiff's subjective testimony as to his injuries and distress. *Id.* at 8; 12; 14.

Plaintiff argues that Plaintiff's testimony, along with the videos introduced by Plaintiff, show that Hollowood's conduct exceeded "all possible bounds of decency" and was "utterly intolerable in a civilized society." Br. in Opp'n 8, ECF No. 216. The Court quotes the following lengthy description from Plaintiff's Brief, as it will prove helpful in addressing Hollowood's argument respecting Plaintiff's IIED claim and Hollowood's argument respecting remittitur:

> Defendant Hollowood challenges the jury's finding on the IIED claim on the basis of a lack of a medical expert. However, the testimony adduced at trial substantially meets that standard. For example, the video shows that after being dragged down the steps, Plaintiff was seizing. He was taken to medical. Nurse Larissa Kutek testified at trial that urination is a common occurrence during a seizure. The video of Plaintiff while he is in medical with Nurse Kutek clearly shows that his pants were wet and his legs were shaking. Plaintiff complained of pain on the left side of his chest and shortness of breath. He had a hematoma on his eye. He was placed under a 23-hour observation.
>
> Plaintiff testified to the effects of the battery. He has emotional pain beneath his anger. He suffers from nerve damage and loss of hearing. He blinks in and out

while in his cell. He gets night terrors and has PTSD. He now takes medications for conditions that he never had prior to February 25, 2019. Plaintiff cannot work. When he tries to sign up for a job at the prison, he is told that he is not medically clear because he gets seizures, has nerve damage[,] and has PTSD.

Plaintiff's testimony, as well as the video of Plaintiff in medical, demonstrate the serious physical and emotional consequences of Defendant Hollowood's battery of Plaintiff. Viewed in the most favorable light towards Plaintiff, the evidence preponderates against Defendant Hollowood for the intentional infliction of emotional distress.

*Id.* at 9-10 (citations omitted).

In this instance, the Court agrees with Hollowood that "the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." *In re Lemington Home for the Aged*, 777 F.3d at 626. To recover on an intentional infliction of emotional distress claim, Plaintiff was required to introduce competent medical evidence substantiating his injuries caused by severe emotional distress. Pennsylvania courts have held that "competent medical evidence" means *expert testimony*. *See Gray*, 147 A.3d at 930 n.4. Because Plaintiff introduced none, the jury could not find that Plaintiff suffered a compensable injury on his intentional infliction of emotional distress claim. Hollowood's Rule 50 Motion is granted as to Plaintiff's claim for intentional infliction of emotional distress, and the Judgment in this matter will be amended to omit the jury's award of $250,000.00 on this claim.

**B. Rule 59 Motion**

**1. Scope of Employment**

Hollowood's argument raised under Rule 59 with respect to scope of employment is materially similar to that advanced with respect to Rule 50, i.e., that he believes that the weight of the evidence shows that Hollowood was working a shift for his employer at the time of the incident and that his use of force was a reaction to Plaintiff's conduct and was motivated by the penological goal of securing Plaintiff during the search. Br. in Supp. 10, ECF No. 215. He argues that the

12

"jury's verdict to the contrary is against the great weight of the evidence, as the record is bereft of any evidence showing that the motivation for Hollowood's conduct was divorced from penological goals[,]" and again argues that Plaintiff failed to present evidence establishing that Hollowood acted out of personal motivation or animus towards Plaintiff. *Id.* He further argues that, because the jury found that Plaintiff did not sufficiently establish that Hollowood's use of force was either excessive (under the Eighth Amendment) or malicious (thus warranting punitive damages), the force must therefore be "of the type that would be expectable by the Department of Corrections in the course of Defendant's employment." *Id.* at 11.

Initially, the fact that the jury found that Plaintiff failed to meet his burden of establishing by a preponderance of the evidence that Hollowood violated Plaintiff's constitutional rights or that punitive damages were warranted on his tort claims does not establish that Hollowood met *his* burden of proving that the force he used was of the type expectable by his employer or was actuated by a desire to serve his employer. If Hollowood were correct that a battery committed by a corrections officer must involve a malicious use of force to fall outside of the scope of employment, a plaintiff would in all instances be required to establish that punitive damages are warranted to succeed on a claim for battery against a corrections officer. Hollowood cites to no case law supporting such a proposition. The jury's conclusion that Plaintiff did not establish a violation of his Eighth Amendment rights and their failure to award punitive damages on Plaintiff's tort claims are entirely consistent with each other, as well as the Court's instructions, which the parties agreed upon and which provide:

> In order to establish his claim for violation of the Eighth Amendment, Michael Allen must prove that Defendants used force against him *maliciously*, for the purpose of causing harm, rather than in a good faith effort to maintain or restore discipline. It is not enough to show that, in hindsight, the amount of force seems unreasonable; the plaintiff must show that the defendant used force maliciously, for the purpose of causing harm.

. . . .

You may only award punitive damages if you find that a Defendant or Defendants acted *maliciously or wantonly* in violating Michael Allen's federally protected rights.

ECF No. 188 (emphasis added).

For the reasons discussed above, the Court will not disturb the jury's verdict on this issue, which the Court finds was supported by the weight of the evidence.  The jury was presented evidence from which it could find that Hollowood repeatedly used slurs as he choked and struck Plaintiff, and he also made statements likely to increase the level of force utilized by other officers and instructed other officers to break Plaintiff's fingers.  The Court finds that no witness testified more credibly than any other with respect to Hollowood's use of racist slurs, as each had the same incentive for potential dishonesty – that is, the use of slurs tended to support Plaintiff's claims, and each Defendant was facing potential liability on each of Plaintiff's claims.  Hollowood and Plaintiff may not have known each other prior to the incident, but the jury was certainly warranted in finding that Hollowood displayed personal animus on the day in question and that he failed to meet his burden of establishing that he was acting within the scope of his employment.  The Court will not disturb the jury's verdict.  Hollowood's Rule 59 Motion on this issue is hereby denied.

## 2.  Intentional Infliction of Emotional Distress

Because the Court has granted Hollowood's Rule 50 Motion on this issue, his Rule 59 Motion as to Plaintiff's IIED claim is denied as moot.

## 3.  Damages/Amendment of the Judgment

Hollowood further argues that this Court should order remittitur of the damages awarded by the jury because the award is excessive and unsupported by the record."  Br. in Supp. 12, ECF

No. 215.  With respect to remittitur, the United States District Court for the Eastern District of

Pennsylvania has explained:

> Under Rule 59(e), a party may seek alteration or amendment of the verdict.  The
> Third Circuit has explained that courts reduce damages awards in one of two
> circumstances, which are often colloquially referred to as "remittitur": when a court
> reduces an award as excessive or legally unsupported to satisfy constitutional due
> process concerns, and when it considers an award unreasonable on the facts of the
> case at hand.  *Cortez v. Trans Union, LLC*, 617 F.3d 688, 715–16 (3d Cir. 2010);
> *Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1201 (3d Cir. 1986).
> "There must be a rational relationship between the specific injury sustained and the
> amount awarded."  *Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 773 (3d Cir. 1987).
> "While a district court has discretion in determining whether a jury's verdict is
> excessive, it is undisputed that the court may not vacate or reduce the award merely
> because it would have granted a lesser amount of damages."  *Motter v. Everest &
> Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir. 1989).

*Taha v. Bucks Cnty. Pennsylvania*, 408 F. Supp. 3d 628, 637 (E.D. Pa. 2019).

Hollowood argues that the jury's award of $250,000 compensatory damages as to

Plaintiff's battery claim and $250,000 as to Plaintiff's intentional infliction of emotional distress

claim "bears no rational relationship to the injury sustained, nor to the trial record."  Br. in Supp.

14, ECF No. 215.  He further argues that the fact that no medical evidence was introduced makes

the jury's award excessive.  *Id*.  Hollowood asserts that "[t]his is particularly true as it relates to

the IIED claim, where the 'outrageousness' of the conduct is wholly detached from competent

medical evidence of emotional distress."  *Id*.  He again argues that the only evidence as to damages

consisted of Plaintiff's subjective testimony as to his injuries and distress.  *Id*.

While, as discussed above, expert testimony is always required to establish an injury and

succeed on an IIED claim, the same is not true for a claim of battery.  *See G.B. v. Jade Nails Hair

Spa*, No. 5:19-CV-06093-JMG, 2023 WL 5939837, at *4 (E.D. Pa. Sept. 12, 2023) (declining to

award default judgment on IIED claim because plaintiff did not introduce expert medical evidence

as required under Pennsylvania law, but granting default judgment and awarding damages on

battery claim where Plaintiff testified as to the nature of her physical and emotional injuries and submitted medical records). "The law is well established that expert testimony is not necessary where the cause of an injury is clear and where the subject matter is within the experience and comprehension of lay jurors." *Montgomery v. Bazaz-Sehgal*, 798 A.2d 742, 752 (Pa. 2002); *see also G.B.*, 2023 WL 5939837, at *3 ("In fashioning a compensatory damages award concerning pain and suffering, 'such an award should include compensation for a Plaintiff's physical pain and suffering, as well as for any mental anguish, inconvenience, disfigurement, humiliation, and the loss of enjoyment of life.'" (quoting *McDonald v. United States*, 555 F. Supp. 935, 971 (M.D. Pa. 1983))).

The Court need not address remittitur as it concerns Plaintiff's intentional infliction of emotional distress claim, as the Court has already granted Hollowood's Rule 50 Motion as to that claim. With respect to the jury's award of $250,000.00 on Plaintiff's battery claim, while perhaps not every injury cited by Plaintiff at pages 9 through 10 of his brief and quoted above can be sufficiently linked to Hollowood's commission of a battery against Plaintiff in the absence of expert testimony (in particular, Plaintiff's assertion that he suffered, and continues to suffer, from seizures and nerve damage as a result of Hollowood's assault), Plaintiff's testimony and the videos introduced were, in this Court's estimation, sufficient to establish injuries warranting the jury's award. Accordingly, the Court will not disturb the jury's award on Plaintiff's battery claim. The videos introduced showed that Plaintiff was choked, restrained, and beaten by Hollowood. Plaintiff was eventually dragged down the stairs of the facility, where he appeared to be unconscious and/or convulsing. A hematoma was apparent on Plaintiff's face in the videos, and a DOC nurse testified as to that injury. Plaintiff testified to the physical pain he felt during and after the assault. He further testified to the emotional pain and fear he experiences as a result of the

16

battery.  On the entire record, the Court finds that there existed a rational relationship between Plaintiff's injuries sustained as a result of Hollowood's battery and the amount awarded by the jury on that claim.  Hollowood's Motion is denied to the extent it seeks remittitur.

### IV.    Conclusion and Order of Court

For the reasons discussed above, Hollowood's Motion is granted in part and denied in part. The Motion is granted as to Hollowood's request for judgment notwithstanding the verdict as to Plaintiff's claim for intentional infliction of emotional distress.  The Judgment in this matter will be amended to omit the jury's award of $250,000.00 on this claim.   The Motion is otherwise denied.

BY THE COURT:


_/s/Robert J. Colville_____
Robert J. Colville
United States District Judge

DATED: January 3, 2024


cc: All counsel of record